[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Retinella Bramwell, a black woman of Jamaican descent, was employed by the department of correction as a head nurse effective March of 1994. After completing her working test period, she was transferred to the Jenning Road Detention Center (Jenning) in July of 1994. When Jenning closed, she was reassigned as second shift head nurse to Walker receptions and special management unit.
The plaintiff had requested a lateral move to Walker and that move was effective in June of 1995). At that time, Norma Goodhue was the correctional head nurse supervisor.
The plaintiff alleges that she was discriminated against by virtue of racial remarks made by Goodhue and her interfering with the plaintiff's transfer to Walker. In so far as interfering with the plaintiffs transfer, testimony indicated that her transfer was lateral in nature. In addition, Goodhue testified that she had no control over the plaintiff's move and no authority to approve or prevent an employee's transfer to the Walker facility.
The plaintiff claims that in July of 1995, she learned that Goodhue allegedly made racially derogatory remarks about her prior to her arrival at Walker. The alleged remarks were that the plaintiff was so slow she would make Charlotte Snow look like Florence Nightingale and that the plaintiff was black, a racist and a bigot. Employees Edwin Moralez, Bryan Sherman and Carla Metzler told the plaintiff about these remarks and in December of 1995 Metzler filed a report that she, Moralez and Sherman CT Page 3896 were present when the remarks were made. Also, Moralez and Sherman filed affidavits to that effect as did Irene Carlon who filed an affidavit, but noted therein only the Charlotte Snow remark with no reference to any racial commentary.
During the intervening period from 1995 to 1999, Moralez and Sherman filed lawsuits against Goodhue, which were subsequently dismissed. (Trans. 211-217). The plaintiff admitted that during her entire time at Walker, she never heard Goodhue make a racial remark about her or anyone else. In reference to the credibility of the remarks allegedly made by Goodhue, time records kept by the department of correction conclusively indicate that contrary to the testimony of Sherman, Moralez and Metzler, there was not one day in either May or June of 1995, when Sherman, Metzler, Moralez, Carlton and Goodhue were working at the same time. (Ex. LLL, MMM, T, 535-38).
Accordingly, the court finds those alleged remarks to be less than credible, especially in light of the fact that Vicki Arpin, the director of human resources for the department of correction, compiled a calendar showing the work schedules of the five individuals for May and June of 1995. Arpin testified at trial that there was not one day during the two month period where all five individuals worked together. (Ex UUU T. 1148-49).
After the plaintiff filed her affirmative action complaint with the department of correction in January of 1996 and filed her Commission on Human Rights Opportunities complaint in February of 1996, which later was amended, the plaintiff met Estel McIntosh, the district administrator for health services, to discuss the allegations. McIntosh testified at trial that the plaintiff told her that Goodhue never made any discriminatory comments to her. (Exhibit WWW T-1199-1201).
Orientation is standard procedure at Walker, as it allows numerous people to orient a newcomer. Six people participated in the plaintiff's orientation. Some were correctional head nurses and others were correctional nurses. (Tr. 463). Plaintiff's orientation was extended two days because of her lack of familiarity with medical abbreviations. (T311-13.) Plaintiff admitted she was "weak' on medical abbreviations. (Tr. 895.) When Goodhue administered an impromptu quiz, the plaintiff knew three of the fourteen medical terms given on the impromptu exam. (Ex. 30).
During their testimony, several nurses and nursing supervisors as well as Dr. Edward Blanchette stated that knowledge and use of pertinent medical abbreviations is essential as such is used in the daily charting of the inmates medical records. Therefore, failure to recognize these CT Page 3897 terms was very significant. (T 1060-61). The court Therefore, failure to recognize these terms was very significant. (T 1060-61). The court finds that the plaintiff has failed to establish how being required to familiarize herself with medical terms and procedures was a discriminatory or harassing activity.
The plaintiff testified that she did not receive timely evaluations and those she did receive were designated as less than satisfactory (T-808-09, 906). She further claimed her evaluation of September 8, 1995 (Ex. 21) was discriminatory because Goodhue was her supervisor for only three months.
The plaintiff testified others in her department were treated differently (T 934-940). Nursing supervisor Esther McIntosh testified that she routinely signed off on evaluations done for a period of less than one year (T. 1205) and that three month evaluations are far from unusual.
The plaintiff had previously received less than one year evaluations. She reviewed an evaluation from Amy Cobuzzi that was for less than one year (Ex. 31, T. 928-32). Then another evaluation less than one year from her supervisor Maurice Cooper which was a less than one year evaluation. (Ex. 10, T. 934). Plaintiff made no complaint about those evaluations. The three-month evaluation done by Goodhue was a satisfactory one (Ex. 21, T. 332). Goodhue noted a positive addendum to the plaintiff's service rating even after the plaintiff filed her discrimination complaint. (Ex. 21, T. 332). The plaintiff lost no salary bonuses, benefits, duties or responsibilities or promotional opportunities on account of the evaluation. Numerous other individuals received evaluations that were inferior to the plaintiffs. Edwin Morales, Mary Jane Kozlowski, Bryan Sherman and Carla Metzler all received fair evaluations in 1995, those ratings being lower than the one received and challenged by the plaintiff. (Ex. 57, T. 503-04; 620-21.)
In addition, other individuals that received evaluations of less than a year included Veronica McAlmond, Tammy Britton and Mary Jane Kozloski (all white employees). (Ex. BB, JJ, KKK, T. 514-15, 556).
Plaintiff alleged she received unnecessary, excessive and inappropriate counseling during her time at Walker, but admitted at trial that counseling is only a warning, not discipline. (T. 741.)
Standard procedure was for Goodhue to coordinate counseling with her supervisor, Esther McIntosh, prior to presentation to the affected employee. (T. 1195). CT Page 3898
Esther McIntosh, the district administrator and Vicki Arpin, the personnel administrator for department of correction testified that oral counseling is not considered discipline.
Numerous other employees were counseled or disciplined. At least eight other employees were counseled for less than satisfactory performances during the same time period. In some cases, discipline or suspensions were imposed. No such adverse action was ever taken against the plaintiff. None of the oral counseling sessions were considered discipline.
The plaintiff offered no testimony that any of the counseling sessions resulted in loss of salary, benefits, duties or promotional opportunities. The plaintiff alleged that she was denied request for time off. The court finds no evidence in the record to support this allegation. The plaintiff alleges that her shift was changed and that the reason therefore was discriminatory. Shift selection was given for longevity with the department of correction according to union contract. (T. 1159). The only shift available upon plaintiff's transfer to Walker was a 4 p. m. to 12 p. m. shift with every other weekend off. (T. 463). The other 3 p. m. to 10 p. m. shift was taken by an employee with more department of correction seniority than plaintiff.
Subsequently, the 3 p. m. to 10 p. m. shift was offered to the plaintiff when it became available, but the plaintiff declined and stated that she liked her time slot from 4 p. m. to 12 p. m. (T. 519-20). The plaintiff raised claim at trial that she was retaliated against by virtue of her being denied promotion.
At trial, the plaintiff testified that she filed an application with the department of correction on May 8, 1996 for a supervisor position at Walker. (Ex. 59, T-802). In a return letter from Carol Guy of the human resources office at the department of correction, the plaintiff was told that she was not eligible for the position inasmuch as she had not taken the proper examination. (Ex. 60, T. 807-808). Additionally, Vicki Arpin, personnel administrator for the department of correction, testified that the plaintiff was ineligible for the position that she allegedly applied for. (T. 1153). While it appears that an examination was given for the position of correctional hospital nurse supervisor (Ex. 63, T. 1280), uncontroverted testimony revealed that the plaintiff never applied to take the exam and therefore, could not be on any certification list sent out by the department of administrative services that would make her eligible for employment as a supervisor. (T. 1281).
The plaintiff disputed the accuracy of both the department of correction and department of administrative services' determination of CT Page 3899 ineligibility. (T. 957-57). Bramwell claimed that she was eligible in that she passed a nursing supervisor general exam and received notification from department of administrative services about that. (Ex. 61, T. 805-06). The nursing supervisor general position, however, is not one that department of correction uses and being on its certification list would not make her otherwise eligible for any department of correction position. (T. 1157). The only correctional hospital nursing supervisor list which Bramwell was on was dated June 1997, from which no promotions were ever made. (Ex. QQ, T. 1154, 1156).
Pamela Libby, director of personnel assessment at the department of administrative services, testified that she compiled a list of positions which the plaintiff was eligible for from 1993 to June 1997. (Ex. XXX, T. 1275-76). Bramwell was not eligible for a correctional nursing supervisor position because she was not on any such certification list during the time span. The only exam that the plaintiff took and passed was the nursing supervisor general exam, a position that department of correction does not have and that is not otherwise comparable. (T. 1282). The plaintiff's complaint is brought under the Connecticut Fair Employment Practices Act which provides that:
 (a) It shall be a discriminatory practice in violation of this section: (1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, learning disability or physical disability, . . . and
 (4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any discriminatory employment practice or because he has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84. . . . General Statutes § 46a-60
(a)(1)(4).
The two pertinent causes of action in the plaintiff's complaint allege race discrimination and retaliation. CT Page 3900
1. Race Discrimination
In her complaint, the plaintiff alleges that she is an African-American and claims that she has been harassed and discriminated against in a number of ways.[1] At trial, she offered proof of her allegations.
In Yancey v. Allstate Insurance Co., Superior Court, judicial district of Hartford at New Britain, Docket No. 573357 (November 2, 1999, Peck,J.) the court defined the elements of a race discrimination claim and indicated that in addition to Connecticut law, it is appropriate to look to federal law for guidance. As the Connecticut Fair Employment Practice Act (CFEPA), General Statutes § 46a-51 et. seq. is closely modeled after Title VII of the Civil Rights Act of 1964, it is appropriate to look to federal case law interpreting Title VII for guidance in interpreting § 46a-60. See Brittell v. Department of Correction,247 Conn. 148, 164, 717 A.2d 1254 (1998); State v. Commission on HumanRights Opportunities, 211 Conn. 464, 470-71, 559 A.2d 1120 (1989);Civil Service Commission v. Commission on Human Rights Opportunities,195 Conn. 226, 230, 487 A.2d 201 (1985); Wroblewski v. LexingtonGardens, Inc., 188 Conn. 44, 53, 448 A.2d 801 (1982); Pik-Kwik Stores,Inc. v. Commission on Human Rights Opportunities, 170 Conn. 327, 331,365 A.2d 1210 (1976). To establish a prima facie case of discrimination, the plaintiff must show that (1) he was a member of a protected group; (2) he was qualified for the job; (3) he suffered an adverse employment decision; and (4) the adverse employment decision occurred under circumstances giving rise to a reasonable inference [*10] of discrimination. See Texas Department of Community Affairs v. Burdine,450 U.S. 248, 253-54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); McDonnellDouglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668
(1973).
To the extent that the plaintiff alleges a "quid pro quo" type of discrimination, she offers no evidence of such discrimination. There is no testimony that anyone ever made any racial remarks to the plaintiff. The only testimony that was presented to the court was that on one
occasion, one remark was allegedly made by Goodhue to others that the plaintiff was a racist/bigot. The more credible evidence presented by the defendant refutes that and more definitively, the time records reveal that contrary to the statements and sworn testimony of Moralez, Sherman and Metzler, there was never a day in May or June of 1995 when all individuals worked on the same day. (T-79-80, Ex. LLL, MMM, T, UUU).
It is, therefore, necessary to explore the question of whether the plaintiff suffered from a "hostile work environment." The legal standard is delineated in the analogous case of Brittell v. Department ofCorrection, supra, 148, which dealt with the issue of sexual harassment CT Page 3901 in the workplace. "To establish a claim of hostile work environment, the "the workplace [must be] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Brittell v. Department of Correction, supra, 167, quotingHarris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).
 Additionally, [I]n order to be actionable. . . . A sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. . . . [W]hether an environment is sufficiently hostile or abusive [is determined] by looking at al the circumstances. . . . (Citations omitted; internal quotation marks omitted.) Faragher v. Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662
(1998); Brittell v. Department of Correction, supra, 167.
The United States Supreme Court in Clark County School District v.Breeden, 532 U.S. 268 (2001) most recently held that single, isolated incidents, will not amount to discriminatory alteration of the normal terms and conditions of employment. Id., 271, quoting Faragher v. BocaRaton, supra, 788. In accordance with Clark, no single comment such as that attributed to Goodhue, and not even directed at the plaintiff, could violate the legally mandated Title VII or General Statutes § 46a-60
standard.
In addition to the racial remark alleged in the plaintiff's complaint (paragraph 7a-f), she alleges a number of actions which she deems to be harassment.
It is the court's opinion that no evidence was presented that indicated either unwarranted actions on the part of Goodhue or the department of correction toward the plaintiff. The plaintiff's complaints about her evaluations, training and informal oral counseling fall short of her requisite burden of proof; other white males and females received worse evaluations, as many or more oral counseling and some received actual discipline. In comparison, the plaintiff was never disciplined in the workplace and her evaluations were, at all relevant times, satisfactory.
In short, the plaintiff has failed to demonstrate any causal connection between her race and her evaluations, her counseling and her general treatment in the work place. Moreover, and more importantly, the plaintiff failed to provide any evidence whatsoever that she suffered an CT Page 3902 adverse employment action, as required for proof of racial discrimination. of importance, the plaintiff was never demoted, transferred or discharged, nor did she suffer any monetary consequences. She continued her job as a correctional head nurse and received annual salary increases with virtually no change in status for the entire duration of her alleged claims. The plaintiff, therefore, failed to meet her burden of proving race discrimination.
2. Retaliation.
To establish a prima facie case of retaliation, the plaintiff must sufficiently allege that (1) she was engaged in protected activity; (2) the defendant was aware of the activity; (3) the plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. Reed. v. A.W.Lawrence Co., Inc. 95 F.3d 1170, 1178 (2d Cir. 1996).
As with her count of race discrimination above, the plaintiff has offered no evidence that she suffered an adverse employment action. The plaintiff alleged in her complaint and testified that the defendant subjected her to unfavorable terms and conditions of employment because she objected to the defendant's discriminatory employment practices (Complaint, Count 3, paragraph 11.), yet she never identified any "unfavorable terms and conditions."
The plaintiff first made a complaint, by way of an incident report, dated December 12, 1995. (Ex. 11). She then complained about race discrimination in her affirmative action complaint dated January 16, 1996. (Ex. 12). Between the time of the internal complaints to the department of correction and the filing of her commission on human rights and opportunities complaint on February 20, 1996, the only adverse incident at work that the plaintiff testified about was an informal oral counseling in February of 1996 (Ex. 58) because she failed to administer afternoon insulin to two diabetic patients for a four-day period. Her incident reports submitted in response to the counseling, (Ex. K 1-4) attests to her "misunderstanding" of the doctor's orders. Again, the plaintiff was not even disciplined for this incident.
The plaintiff raised the issue that she was not promoted to the position of correctional hospital nursing supervisor while she was at Walker between June of 1995 and June of 1997. She introduced a document from the department of administrative services indicating that she was on a certified list for a nursing supervisor (general). (Ex. 61). She has offered no documentary evidence that the position is the same as a correctional hospital nursing supervisor. In fact, the other two documents that she introduced, (Ex. 59 and 60) indicate to the contrary. CT Page 3903 They specifically indicate that she was not otherwise qualified for the position for which she inquired. Additionally, both Arpin and Pamela Libby, director of personnel assessment for department of administrative services, both testified that the nursing supervisor general position is not a position that the department of correction uses and the fact that the plaintiff was on a certification list for the "general" position would not make her otherwise eligible for a department of correction position. (T-1 157). The plaintiff was not eligible between May of 1994 and June of 1997 for a department of correction supervisor's position. (Ex. XXX, T-1275-76).
More importantly, the plaintiff offered no evidence that a promotional opportunity existed, that she applied for an open position, that a position was filled and that a position was filled by a less qualified candidate. Arpin indicated that no promotions were made from the June 1997 certification list, which was the only department of correction list that included the plaintiff's name. (Ex. QQ, T-1154-1156). Parenthetically, the plaintiff's name appeared as twentieth on the list of twenty-four eligible individuals. Finally, the plaintiff never mentioned the promotion in either her commission on human rights and opportunities complaint or her amended commission on human rights and opportunities complaint. Thus, the court finds that the plaintiff's argument of retaliatory conduct in failing to be promoted is nothing more than one that is both time barred and lacking in evidentiary validation.
The defendant did not terminate, transfer, deduct wages or benefits, or even formally reprimand the plaintiff after she filed her discrimination complaint. The plaintiff's perception of unpleasant experiences in the work place do not necessarily rise to the level of retaliation. Yancey
v. Allstate Insurance Co., supra, Superior Court, Docket No. 573357, quoting Wanamaker v. Columbian Rope Company, 108 F.3d 462, 466 (2d Cir. 1997). See also Claude v. American Stores, Co., 76 F. Sup.2d 883, 885-86
(N.D. Ill. 1999) (the threat of discipline without more does not amount to an adverse employment action).
To the extent that the plaintiff has failed to prove an adverse employment action, she has failed to prove a case of retaliation. Similarly, she has not proven factual circumstances that would rise to the level of conduct that could be considered either discriminatory or retaliatory. Finally, she has offered no evidence to suggest that there is any casual connection between the filing of her discrimination complaints and her oral counseling in February of 1996 or her alleged promotional discrimination.
The defendant claims that the plaintiff's claims are substantially time barred. Section 46a-82 (e) of the Connecticut General Statutes provides: CT Page 3904
 (e) Any complaint filed pursuant to this section must be filed within one hundred and eight days after the alleged action of discrimination except that any complaint by a person claiming to be aggrieved by a violation of subsection (a) of section 46-80 must be filed within thirty days of the alleged act of discrimination.
In view of General Statutes § 46a-82 (e), the Connecticut commission on human rights and opportunities looks back 180 days from the date of the complaint in order to determine the timeliness of allegations.
The plaintiff, in this action, brought her complaint on February 20, 1996. An amendment was filed on April 23, 1996. In her initial commission on human rights and opportunities complaint, the plaintiff alleged racial discrimination, the basis of which was: (1) being told in July of 1995, by four individuals, that Goodhue made certain racially derogatory comments; (2) that prior to the plaintiff working at Walker, Goodhue actively tried to prevent her transfer to Walker; (3) that on September 11, 1995, she was given an annual evaluation based upon three months of work; and (4) that was given an annual evaluation based upon three months of work; and (4) that Goodhue conducted a test on June 12, 1995 when no one else had been given a test. She further claimed that she suffered retaliation after reporting the incident in December of 1995. (Ex. 58). Moreover, in her amended complaint the plaintiff added that prior to her transfer to Walker her work hours had been changed.
All of the allegations in the plaintiff's complaint, with the exception of the September 11, 1995 evaluation and the claim of retaliation are outside of the 180 day statutory requirement. All incidents prior to the plaintiff's arrival at Walker in June of 1995, including comments attributed to her supervisor, took place more than 180 days before her complaint was filed. Similarly, all issues about the plaintiff's work hours took place long before the 180 day limit within which time the plaintiff had to file her amended complaint.
On September 11, 1995, the plaintiff received a "satisfactory" evaluation from Goodhue. The plaintiff's claim that she received an unsatisfactory evaluation because she was a black woman fails when viewed in conjunction with other evidence that white women and men received less satisfactory evaluations from the same supervisor.
With respect to her allegations of retaliation, the only event that the plaintiff experienced in the work place between her December 12, 1995 CT Page 3905 incident report and April 25, 1996, when Goodhue left Walker, was an oral counseling for failure to give afternoon insulin to two inmates for a period of four days. That counseling did not result in discipline nor did it rise to the level an adverse employment action. The court finds that the defendant has failed to establish by her burden of proof any of the allegations complained of. Accordingly, the complaint is dismissed. Having found that the plaintiff failed to prove the essential elements of her complaint, the court does not have to determine whether they are time barred.
Judgment may enter for the defendant.
KOCAY, J.