Katherine B. PARIS, Plaintiff,

v.

**CHRISTIANA CARE VISITING NURSE ASSOCIATION, Defendant.**

No. 01–110.

United States District Court, D. Delaware.

April 8, 2002.

 

Katherine Paris, Wilmington, DE, pro se.

David H. Williams, Morris, James Hitchens & Williams, Wilmington, DE, Michael J. Ossip, Paul M. Secunda, Morgan Lewis & Bockius, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

SLEET, District Judge.

## I. INTRODUCTION

On February 15, 2001, the plaintiff Katherine Paris, filed a *pro se* complaint against the Christiana Care Visiting Nurses Association ("Christiana Care"). Paris, a former secretary at Christiana Care, originally alleged violations of the Americans with Disabilities Act, 29 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Paris claims that she was discriminated against based on her religion and disability, and was subjected to a hostile work environment based on her gender. (D.I. 1 at 2.) On August 1, 2001, the parties stipulated to the dismissal of the religion and disability claims. Thus, Paris's hostile work environment claim is the only remaining claim.

Presently before the court are two motions for summary judgment—one filed by the plaintiff and the other filed by the defendant. In her motion for summary judgment, the plaintiff asserts that the jokes and other comments that she experienced in the workplace created a hostile work environment that caused her great stress, eventually affecting her job performance. In its motion for summary judgment, the defendant argues that none of the jokes or comments that Paris heard constitute a violation of Title VII because

the incidents were not severe or pervasive. In the alternative, Christiana Care argues that even if the comments were actionable sexual harassment, Paris failed to follow the company's established sexual harassment grievance procedures as required by the *Faragher–Ellerth* doctrine.

Upon review of the facts and the applicable law, the court is persuaded that Paris was not subject to a hostile work environment at Christiana Care. Therefore, the court will grant the defendant's motion for summary judgment. Similarly, the plaintiff's motion for summary judgment will be denied. The reasons for the court's ruling will be explained below.

## II. FACTS [1]

Katherine Paris was hired by Christina Care on April 10, 1998 as a temporary employee. She was initially assigned to work in the Finance Department under Christiana Care Chief Financial Officer Namita Kasat. Later that summer, Paris was reassigned to the Administrative Services Department. She then worked with Richard Cherrin, Christiana Care CEO, and Ellen Donovan, Director of Administrative Services.

Paris was offered a permanent position as an Executive Secretary in the Administrative Services Department on September 6, 1998. In that capacity, she would work primarily with Richard Cherrin. Paris ac-cepted the position. On September 21, 1998, Paris signed a form acknowledging that she received a copy of the Christina Care Employee Handbook, which contains the company's sexual harassment policy.

There are essentially six comments, conversations, or incidents that form the basis of Paris' hostile work environment claim. First, in mid-June 1998, Paris claims that she overheard a conversation between Donovan and Cherrin. In the conversation, Donovan indicated that her husband had undergone prostate surgery. Ms. Donovan told Mr. Cherrin that she was having difficulty arousing her husband after the surgery, and that although she tried to dress in a more provactive manner, nothing seemed to work. Although Paris was in the room at the time, she was not a participant in the conversation, and the conversation was not directed toward her.[2]

In October 1998, after she became a permanent employee, Paris attended a "Big Thursday" meeting. Big Thursday meetings are gatherings of middle managers from across the state. There were approximately forty persons present at the October 1998 gathering. Ms. Kasat opened the meeting with a joke. The joke went something like this: A minister, a priest and a rabbi are asked whether sex is work or pleasure. The minister and the

---

1. As an initial matter, the court notes that the plaintiff has several pending discovery motions. The court has reviewed the motions and has determined that the facts or admissions sought merely reiterate facts already in the record. The discovery presents no new material facts, and does not change the recitation of facts presented in this memorandum. Thus, even assuming that the information the plaintiff seeks is true, the discovery will in no way affect the court's resolution of this matter. Therefore, the court will dismiss these motions after granting summary judgment.

2. Although the defendant's brief implies that Ms. Paris has admitted that no incidents of harassment occurred during her temporary employment, the court disagrees. In her deposition, Paris clearly states that the conversation between Donovan and Cherrin occurred in June 1998. (D.I. 42 at A23.) Moreover, Paris indicated that any previous statement by her that no harassment had occurred prior to September 1998 was made in error. (*Id.* at A24.) Thus, the court will accept Paris' allegations as true and find that the incident occurred in June 1998 before she became a permanent employee.

priest both state that sex is for procreation, and is therefore work. The rabbi pauses, and then states that sex must be pleasure because if it was work, his wife would hire someone else to do it. (This has been referred to as the "Three Wise Men" joke.) Paris alleges that she believed the joke was completely inappropriate for the workplace, but also acknowledges that the joke was directed toward the entire audience.

Paris further alleges that in October 1998, she asked a female employee named Nazreen Nazamyar to assist her in compiling a list of employee phone numbers. Nazamyar told Paris that one of the employees was named Tina Hancock. According to Paris, Nazamyar then repeated the name "Hancock" slowly, grinned, and remarked, "I wonder how you spell that." Paris stated that the comment made her sick and nauseous.

Paris' fourth allegation concerns a December 1998 conversation involving her, Cherrin, and a receptionist. The three were discussing the Bill Clinton–Monica Lewinski affair. Paris alleges that at some point during the conversation, Cherrin stated, "Maybe she gives good blow jobs," and walked away laughing. Paris again stated that the comment made her sick, but admitted that it was not directed at her in any way.

Paris further alleges that in December 1998, a co-worker named Patricia Garvey told her that Mr. Cherrin's previous secretary had developed a fictitious resume for her (Ms. Garvey) that listed her employment as an actress in pornographic films. Paris admits that Garvey told her that she thought the false resume was "hysterical," and that some men from work, including a manager, called her at home pretending that she was the person on the resume. (D.I. 42 at A36.) Paris stated that the incident made her feel disgusted and angry.

Finally, Paris asserts that Cherrin's e-mail "moniker" was offensive to her.[3] Cherrin's moniker was "Just call me Tiger." Paris stated that she believed that this was a sexual reference related to Cherrin's prowess in the bedroom. However, Paris admitted that this was based solely on her opinion of Cherrin. She also conceded that neither Cherrin nor other employees had indicated that his e-mail moniker was intended to convey a sexual message.

Although Paris asserts that these incidents caused her great distress, she acknowledges that she never filed a complaint with Christiana Care's Human Resource Department.

In a memo dated January 6, 1999, Christiana Care noted that Paris had failed to submit Cherrin's time sheets on time, misscheduled his appointments, and was not able to take "charge" in his absence. The memo further noted that Paris was extremely emotional and had interpersonal problems with co-workers. Paris was terminated on January 7, 1999.

Paris filed discrimination claims with both the Delaware Department of Labor and the Equal Employment Opportunity Commission ("EEOC"). The EEOC found that Paris's claims for discrimination based on religion and disability were baseless, but thought there was some merit to the hostile work environment claim. (D.I. 48 at A21.) After conciliation failed, the EEOC issued a right to sue letter on

---

**3.** Although Paris used the term "moniker," the record implies that the term moniker refers to Cherrin's e-mail signature. The signature is that portion of an electronic message that appears at the end of the message. The signature can include a person's name, a favorite quote, a legal disclaimer, or other such material selected by the user.

November 15, 2000. (D.I. 1 at 5.). This lawsuit followed.

## III. STANDARD OF REVIEW

▮ Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P 56(c). A fact is material if it might affect the outcome of the case, and an issue is genuine if the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmovant. *See In re Headquarters Dodge, Inc.*, 13 F.3d 674, 679 (3d Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). When deciding a motion for summary judgment, the court must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Pacitti v. Macy's*, 193 F.3d 766, 772 (3d Cir.1999). The non-moving party, however, must demonstrate the existence of a material fact—not mere allegations—supplying sufficient evidence for a reasonable jury to find for the non-movant. *See Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir.1996) (citation omitted). To raise a genuine issue of material fact, the nonmovant "need not match, item for item, each piece of evidence proffered by the movant but simply must exceed the 'mere scintilla' [of evidence] standard." *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir.1993) (citations omitted). The nonmovant's evidence, however, must be sufficient for a reasonable jury to find in favor of the party, given the applicable burden of proof. *See Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.[4]

## IV. DISCUSSION

▮ In order to prove that her Title VII rights were violated due to a hostile work environment, a plaintiff must prove that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) she was detrimentally affected by the discrimination; (4) the discrimination would detrimentally affect a reasonable person of the same sex in the same position; and (5) respondeat superior liability exists. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir.1990). The court must consider the totality of the circumstances when determining whether a hostile work environment exists. *See id.*

The court finds that Paris has failed to present facts that would permit the court to find that the first two prongs of the *Andrews* test have been met. Since she cannot satisfy these two "essential elements" of her prima facie case, the court need not address the other three parts of the *Andrews* test. *See Arasteh v. MBNA America Bank*, 146 F.Supp.2d 476, 493 (D.Del.2001) (noting that where plaintiff has not met certain essential elements of her prima facie case, the court need not consider the remaining elements) (citations omitted). The court will now explain why Paris has failed to meet the first two prongs of the test.

**4.** Although the plaintiff has pending discovery motions, she does not assert that further discovery is necessary before this matter will be ripe for summary judgment. Furthermore, the plaintiff has failed to file an affidavit as required by Federal Rule of Civil Procedure 56(f). (Although the plaintiff is appearing *pro se*, none of her submissions can charitably be read as meeting the Rule 56(f) requirements.)

Finally, the fact that the plaintiff filed her own motion for summary judgment implies that she concedes that the record is sufficiently well developed so that summary judgment is appropriate at this time. Thus, the court finds that there is no impediment to engaging the summary judgment process at this point in the case.

## A. Intentional Discrimination Because of Her Sex

 In order to prove intentional discrimination based on her sex, Paris must demonstrate that the statements made contained a gender based animus. Statements need not be explicitly sexual to meet this requirement. *See id.* at 493 (citing *Andrews,* 895 F.2d at 1485). Nevertheless, gender must be a "substantial factor in the discrimination." *Id.* Thus, the plaintiff must show that she would not have been treated in the same way if she were a man. *See id.* This determination is easier when the allegations involve sexual propositions, innuendo, pornographic material, or sexually derogatory language. *See id.* Where the claims are not explicitly sexual, however, the court must engage in an intensively factual analysis. *See id.* In that circumstance, comments motivated by perceptions about womanhood or gender stereotypes about women may be actionable. *See id.* (citing *Andrews,* 895 F.2d at 1483–84.) However, "the mere utterance of an epithet, joke, or inappropriate taunt that may cause offense" is not actionable under Title VII. *Id.* (citing *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001); *Oncale v. Sundowner Offshore Serv. Inc.,* 523 U.S. 75, 81–82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *Weston v. Pennsylvania,* 251 F.3d 420, 427 (3d Cir.2001)).

 None of the comments Paris experienced can be considered intentional discrimination based on her gender. First, the record is completely devoid of any evidence of an intent to discriminate against Paris in any way. Although the comments with which Paris takes issue were made either while she was nearby or while she was participating in a conversation, not a single one of the comments was directed at her. Put another way, although the topic of sex may have been mentioned in Paris' presence, no one ever referred to Paris *herself* in a sexual manner. The "Three Wise Men" joke was directed to an audience of forty persons. The e-mail moniker was directed to no one in particular. The "Hancock" comment, while made directly to Paris, was a comment on Ms. Hancock's name, not Paris'. Donovan's comments about her marital life were directed to Cherrin, not Paris. Cherrin's comments, while arguably crass, were directed at Ms. Lewinski, not Paris, and were made in the context of a conversation. Garvey's comments about the pornographic resume were also made in the context of a conversation in which Paris was a willing participant.[5] Given the context of these statements, the court finds that although they were slightly off-color, they do not evince an intent to make Paris feel uncomfortable due to her status as a woman or in any other way.

More important, even if the comments were directed at Paris, the comments were not based on gender in the legal sense. Although the "Three Wise Men" joke concerned sex, it did not involve sexual propositions, innuendo, pornographic material, or sexually derogatory language. The same can be said of Donovan's comments about her husband, the "Hancock" comment, the "Just call me Tiger" moniker and the conversation about Garvey's "resume." Given the non-explicit nature of these comments and the context in which they were made, the court concludes that the statements were not overtly sexual. Nevertheless, comments that are not

---

5. In her deposition, Paris admitted that she believed Ms. Garvey's story was "starting toward the gutter, but I wanted to hear what she had to say." (D.I. 42 at A36—Paris Dep. at 52.)

overtly sexual may be actionable where informed by perceptions about womanhood or gender stereotypes about women. However, none of the above statements refer to antiquated ideas about what women can or cannot do, where women belong, or other perceived limitations on women's abilities, goals, or worth. Thus, the court finds that the five statements mentioned above were not motivated by Paris' gender.

█ Cherrin's statement regarding Monica Lewinski is slightly different. The use of the term "blow job" can fairly be considered sexually derogatory language. Nonetheless, the statement is not actionable. First, the comment was not directed at Paris, but was made during a conversation. At no point did Cherrin relate the statement to Paris in any manner or use the statement as a tool to proposition her to engage in sexual activity. More important, "the mere utterance of an epithet, joke, or inappropriate taunt that may cause offense"is not actionable under Title VII. *Arasteh*, 146 F.Supp.2d at 493. Although Cherrin used poor judgment in making the statement, the record reveals that this was an isolated incident. Paris does not allege that Cherrin made any other sexual remarks to her or around her. Thus, although the remark may have upset Paris, given the context and the fact that it was an isolated "mere utterance," the court cannot conclude that this statement alone was an attempt to discriminate against Paris based on her gender.

For all of the above reasons, the court finds that Paris has not proven that similar comments would not have been made in her presence if she were a man. Thus, the court concludes that the statements were gender neutral and therefore not actionable under Title VII.

## B. Pervasive and Regular Activity

█ In order to be actionable, harassment must be "so severe *or* pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Arasteh*, 146 F.Supp.2d at 494 (citations omitted). In determining whether the harassing activity is severe or pervasive, the court must consider: (1) the frequency; (2) the severity; (3) whether the conduct is physically threatening or humiliating, rather than an offensive utterance; (4) whether it unreasonably interferes with the employee's work performance; and (5) the effect on the employee's psychological well-being. *See id.* at 495. No one of these five factors are required or dispositive. *See id.* Additionally, when evaluating the factors, the court must consider the totality of the circumstances. *See id.*

█ The defendants do not dispute Paris' allegation that the allegedly harassing activities had a psychological impact on her. Nevertheless, Paris fails to satisfy the other four criteria. First, six incidents over a four month period cannot be considered frequent. *Cf. Mertig v. Milliken & Michaels of Delaware, Inc.*, 923 F.Supp. 636, 646 (D.Del.1996) (noting that vulgar comments made "very often" or "daily" over a one year period were sufficient to constitute pervasive harassment). Second, the comments at issue were not severe in an objective sense. As previously noted, the comments were not directed at Paris. *See Black v. Zaring Homes*, 104 F.3d 822, 826 (6th Cir.1997) (noting that the fact that "harassing" comments were not directed at plaintiff "contributes to our decision that the conduct here was not ... severe"). Five of the six the comments were not of a sexually explicit nature. The "blow job" comment, while of a more sexual nature, was made while discussing Bill Clinton and

Monica Lewinsky.[6] Clinton's genitalia were not discussed. More important, the genitalia of the conversation participants was not mentioned. *Cf. Mertig,* 923 F.Supp. at 644 (co-worker made statements referring to women's buttocks and breasts and the length of his penis). The record does not suggest that Cherrin attempted to use the comment to proposition Paris. Paris does not allege that Cherrin so much as leered at her in a lascivious manner while making the statement. None of the six statements implied that Paris or women in general did not belong in the workplace. Given the factual record, the statements in the present case are not sufficiently serious to warrant the conclusion that they are actionable.

Third, although the comments made to Paris were not in the best taste, at no point was Paris (or any other female conversation participant) subjected to any physical conduct that might reasonably be described as abusive or inappropriate. Finally, none of the comments *unreasonably* interfered with Paris' ability to perform her work in an *objective* sense. *See Arasteh,* 146 F.Supp.2d at 495 (noting that the court must consider the "objective severity of the harassment"). The court accepts Paris' claim that the comments caused her distress. However, the court also acknowledges that although it is highly possible that some of the comments might cause a woman of "reasonable sensibilities" to raise an eyebrow or perhaps be mildly offended, given the nature of the statements and the context in which they were made, it is highly unlikely that a reasonable woman would be *so* offended by these six statements that she would be unable to perform in the workplace. Paris has not adduced facts sufficient to establish that a reasonable woman would be as affected by the comments as she was. *See Andrews,* 895 F.2d at 1483 (noting that Title VII standard is meant to protect employers from the "hypersensitive" employee).

Although Paris was affected by the allegedly harassing comments, she has failed to demonstrate that the harassment was frequent, severe, physically threatening or an unreasonable interference with her work. Thus, the court concludes that the comments made to Paris were neither pervasive nor regular.

## IV. CONCLUSION

For all of the above reasons, the court determines that Paris has failed to establish two elements of her prima facie claim for hostile work environment based on her gender. Therefore, the court will grant the defendant's motion for summary judgment. Similarly, the court will deny the plaintiff's motion for summary judgment.[78]

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Plaintiff's Motion for Summary Judgment (D.I.44) is DENIED.

---

6. The sordid details of the Clinton–Lewinski affair—which are common knowledge to all Americans by now—will not be recounted here.

7. The plaintiff places great weight on the EEOC's determination that there was a possibility that she had been discriminated against. However, the court is not bound by the EEOC's determination. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) ("Courts retain these broad remedial powers [to enforce Title VII] *despite* a Commission finding of no reasonable cause to believe that the Act has been violated.") (emphasis added).

8. Because the court finds that Paris has not adduced facts sufficient to meet the requirements for a prima facie case of hostile work environment, the court need not consider the defendant's argument that Paris failed to utilize the applicable sexual harassment procedures.

**120**

2. The Defendant's Motion for Summary Judgment (D.I.40) is GRANTED.

3. Summary Judgment be and hereby is ENTERED in favor of the defendants.

4. The Plaintiff's Motion to Change/Correct Deposition (D.I.29) is DISMISSED AS MOOT.

5. The Plaintiff's Motion to Allow Sexual Harassment Charge Interrogatories (D.I.32) is DISMISSED AS MOOT.

6. The Plaintiff's Motion to Extend the Discovery Deadline (D.I.33) is DISMISSED AS MOOT.

7. The Plaintiff's Motion to Determine Sufficiency of Response to Request for Admissions (D.I.38) is DISMISSED AS MOOT.

8. The Plaintiff's Motion to Reopen Discovery [to obtain answers to interrogatories and requests for admissions] (D.I.39) is DISMISSED AS MOOT.

9. The Clerk shall close this case.