# CLARK COUNTY SCHOOL DISTRICT *v.* BREEDEN

No. 00–866.   Decided April 23, 2001

PER CURIAM.

Under Title VII of the Civil Rights Act of 1964, 78 Stat. 255, as amended, 42 U. S. C. § 2000e–3(a), it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." In 1997, respondent filed a § 2000e–3(a) retaliation claim against petitioner Clark County School District. The claim as eventually amended alleged that petitioner had taken two separate adverse employment actions against her in response to two different protected activities in which she had engaged. The District Court granted summary judgment to petitioner, No. CV–S–97–365–DWH(RJJ) (D. Nev., Feb. 9, 1999), but a panel of the Court of Appeals for the Ninth Circuit reversed over the dissent of Judge Fernandez, No. 99–15522, 2000 WL 991821 (July 19, 2000) *(per curiam)* (unpublished), judgt. order reported at 232 F. 3d 893. We grant the writ of certiorari and reverse.

On October 21, 1994, respondent's male supervisor met with respondent and another male employee to review the psychological evaluation reports of four job applicants. The report for one of the applicants disclosed that the applicant had once commented to a co-worker, "I hear making love to you is like making love to the Grand Canyon." Brief in Opposition 3. At the meeting respondent's supervisor read the comment aloud, looked at respondent and stated, "I don't know what that means." *Ibid.* The other employee then said, "Well, I'll tell you later," and both men chuckled. *Ibid.* Respondent later complained about the comment to the offending employee, to Assistant Superintendent George Ann Rice, the employee's supervisor, and to another assistant

superintendent of petitioner. Her first claim of retaliation asserts that she was punished for these complaints.

The Court of Appeals for the Ninth Circuit has applied § 2000e–3(a) to protect employee "oppos[ition]" not just to practices that are actually "made . . . unlawful" by Title VII, but also to practices that the employee could reasonably believe were unlawful. 2000 WL 991821, at *1 (stating that respondent's opposition was protected "if she had a reasonable, good faith belief that the incident involving the sexually explicit remark constituted unlawful sexual harassment"); *Trent* v. *Valley Electric Assn. Inc.*, 41 F. 3d 524, 526 (CA9 1994). We have no occasion to rule on the propriety of this interpretation, because even assuming it is correct, no one could reasonably believe that the incident recounted above violated Title VII.

Title VII forbids actions taken on the basis of sex that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U. S. C. § 2000e–2(a)(1). Just three Terms ago, we reiterated, what was plain from our previous decisions, that sexual harassment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" *Faragher* v. *Boca Raton*, 524 U. S. 775, 786 (1998) (quoting *Meritor Savings Bank, FSB* v. *Vinson*, 477 U. S. 57, 67 (1986) (some internal quotation marks omitted)). See also *Burlington Industries, Inc.* v. *Ellerth*, 524 U. S. 742, 752 (1998) (Only harassing conduct that is "severe or pervasive" can produce a "constructive alteratio[n] in the terms or conditions of employment"); *Oncale* v. *Sundowner Offshore Services, Inc.*, 523 U. S. 75, 81 (1998) (Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment"). Workplace conduct is not measured in isolation; instead, "whether an environment is sufficiently hostile or abusive" must be judged "by 'looking at all the circumstances,' including the 'frequency of the dis-

criminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher* v. *Boca Raton, supra,* at 787–788 (quoting *Harris* v. *Forklift Systems, Inc.,* 510 U. S. 17, 23 (1993)). Hence, "[a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher* v. *Boca Raton, supra,* at 788 (citation and internal quotation marks omitted).

No reasonable person could have believed that the single incident recounted above violated Title VII's standard. The ordinary terms and conditions of respondent's job required her to review the sexually explicit statement in the course of screening job applicants. Her co-workers who participated in the hiring process were subject to the same requirement, and indeed, in the District Court respondent "conceded that it did not bother or upset her" to read the statement in the file. App. to Pet. for Cert. 15 (District Court opinion). Her supervisor's comment, made at a meeting to review the application, that he did not know what the statement meant; her co-worker's responding comment; and the chuckling of both are at worst an "isolated inciden[t]" that cannot remotely be considered "extremely serious," as our cases require, *Faragher* v. *Boca Raton, supra,* at 788. The holding of the Court of Appeals to the contrary must be reversed.

Besides claiming that she was punished for complaining to petitioner's personnel about the alleged sexual harassment, respondent also claimed that she was punished for filing charges against petitioner with the Nevada Equal Rights Commission and the Equal Employment Opportunity Commission (EEOC) and for filing the present suit. Respondent filed her lawsuit on April 1, 1997; on April 10, 1997, respondent's supervisor, Assistant Superintendent Rice, "mentioned

to Allin Chandler, Executive Director of plaintiff's union, that she was contemplating transferring plaintiff to the position of Director of Professional Development Education," App. to Pet. for Cert. 11–12 (District Court opinion); and this transfer was "carried through" in May, Brief in Opposition 8. In order to show, as her defense against summary judgment required, the existence of a causal connection between her protected activities and the transfer, respondent "relie[d] wholly on the temporal proximity of the filing of her complaint on April 1, 1997 and Rice's statement to plaintiff's union representative on April 10, 1997 that she was considering transferring plaintiff to the [new] position." App. to Pet. for Cert. 21–22 (District Court opinion). The District Court, however, found that respondent did not serve petitioner with the summons and complaint until April 11, 1997, one day *after* Rice had made the statement, and Rice filed an affidavit stating that she did not become aware of the lawsuit until after April 11, a claim that respondent did not challenge. Hence, the court concluded, respondent "ha[d] not shown that any causal connection exists between her protected activities and the adverse employment decision." *Id.*, at 21.

The Court of Appeals reversed, relying on two facts: The EEOC had issued a right-to-sue letter to respondent three months before Rice announced she was contemplating the transfer, and the actual transfer occurred one month after Rice learned of respondent's suit. 2000 WL 991821, at *3. The latter fact is immaterial in light of the fact that petitioner concededly was contemplating the transfer before it learned of the suit. Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.

As for the right-to-sue letter: Respondent did not rely on that letter in the District Court and did not mention it in

her opening brief on appeal. Her demonstration of causality all along had rested upon the connection between the transfer and the filing of her lawsuit—to which connection the letter was irrelevant. When, however, petitioner's answering brief in the Court of Appeals demonstrated conclusively the lack of causation between the filing of respondent's lawsuit and Rice's decision, respondent mentioned the letter for the first time in her reply brief, Reply Brief in No. 99–15522 (CA9) pp. 9–10. The Ninth Circuit's opinion did not adopt respondent's utterly implausible suggestion that the *EEOC's* issuance of a right-to-sue letter—an action in which the employee takes no part—is a protected activity of the employee, see 42 U. S. C. § 2000e–3(a). Rather, the opinion suggests that the letter provided petitioner with its first notice of respondent's charge before the EEOC, and hence allowed the inference that the transfer proposal made three months later was petitioner's reaction to the charge. See 2000 WL 991821, at *3. This will not do.

First, there is no indication that Rice even knew about the right-to-sue letter when she proposed transferring respondent. And second, if one presumes she knew about it, one must also presume that she (or her predecessor) knew *almost two years earlier* about the protected action (filing of the EEOC complaint) that the letter supposedly disclosed. (The complaint had been filed on August 23, 1995, and both Title VII and its implementing regulations require that an employer be given notice within 10 days of filing, 42 U. S. C. §§ 2000e–5(b), (e)(1); 29 CFR § 1601.14 (2000).) The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close," *O'Neal* v. *Ferguson Constr. Co.,* 237 F. 3d 1248, 1253 (CA10 2001). See, *e. g., Richmond* v. *Oneok, Inc.,* 120 F. 3d 205, 209 (CA10 1997) (3-month period insufficient); *Hughes* v. *Derwinski,* 967 F. 2d 1168, 1174–1175 (CA7 1992)

(4-month period insufficient). Action taken (as here) 20 months later suggests, by itself, no causality at all.

In short, neither the grounds that respondent presented to the District Court, nor the ground she added on appeal, nor even the ground the Court of Appeals developed on its own, sufficed to establish a dispute substantial enough to withstand the motion for summary judgment. The District Court's granting of that motion was correct. The judgment of the Court of Appeals is reversed.

*It is so ordered.*