

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-6-2004

# Van Houten v. Sec Dept Veterans

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3289

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Van Houten v. Sec Dept Veterans" (2004). *2004 Decisions.* Paper 411.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/411

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 03-3289 and 03-3294

JAMES F. VAN HOUTEN,
                                        Appellant

v.

ANTHONY J. PRINCIPI,
SECRETARY DEPARTMENT OF VETERANS AFFAIRS

APPEAL FROM THE UNITED STATES DISTRICT  COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 98-cv-00270
District Judge:  The Honorable Legrome D. Davis

Submitted Under Third Circuit LAR 34.1(a)
July 13, 2004

Before: RENDELL, BARRY, and FISHER, <u>Circuit Judges</u>

(Opinion Filed: August 6, 2004)

OPINION

BARRY, <u>Circuit Judge</u>

        In these consolidated appeals, James Van Houten ("Van Houten") challenges two

District Court orders granting summary judgment in favor of his employer, the

Department of Veterans Affairs (the "VA"). In the first, a discrimination case under the Rehabilitation Act of 1973 (the "Act"), 29 U.S.C. § 791, the District Court concluded that Van Houten failed to establish that he was disabled. Van Houten v. Gober, 98-CV-0270 (E.D. Pa. June 6, 2003). In the second, a retaliation case under the Act, the Court concluded that Van Houten failed to establish a nexus between any adverse action and his having filed EEO complaints. Van Houten v. Principi, 02-CV-2173 (E.D. Pa. July 30, 2003). Our jurisdiction arises under 28 U.S.C. § 1291. We will affirm both orders.

## I. **Background**

The parties are familiar with the underlying facts. As such, we will provide a brief summary of those facts at the outset, incorporating additional facts only as necessary to our discussion of the issues. In October 1993, Van Houten was hired as a First Notice of Death Clerk (level GS-3) by the VA in the Philadelphia Regional Office. Upon hiring, he informed the VA that he had carpal tunnel syndrome and a cervical condition and that the Veterans Administration had recently rated him 30% disabled. His position with the VA required him to type notifications of death, eight hours a day, five days a week. The constant typing exacerbated his carpal tunnel syndrome, causing burning in his arms and weakness in his shoulders but, according to Van Houten, he learned to "tough[] it out."

In October 1994, Van Houten was accepted to the Insurance Phone Specialist training program (level GS-5). He began an intensive, six month training program, expecting to be awarded an Insurance Phone Specialist position (level GS-7) after its

2

completion. Prior to completing the program, however, Van Houten was removed from the training sessions, and on May 31, 1995, he was transferred to a Claims Clerk position (GS-5). According to Van Houten, he was singled out, harassed, unfairly scrutinized, and ultimately removed because of his disability. He claims that his supervisor, Karen Berent, frequently spoke to him in a loud tone and that she provided better assistance to other trainees, although he admits he was the only trainee provided various accommodations, including one-on-one instruction.[1] According to the VA, he was transferred in response to an incident on May 11, 1995 involving "insubordination and a physical threat to a supervisor" and "disrespectful conduct to other employees." According to Berent, however, Van Houten was asked to use his training manuals to look up information on dividends, when, in front of other students, he began banging the manuals and then stood up and loudly exclaimed that he would be damned if he was going to be humiliated.

On July 18, 1995, Van Houten filed an EEO complaint, alleging that he had been removed from the training sessions because of discrimination. On April 17, 1996, he filed a second complaint in connection with his transfer, and in 1996 he filed a third complaint, alleging that the 1996 complaint was processed improperly. The Agency dismissed the complaints.

---

[1]Upon starting the program, Van Houten informed management that he was impaired and needed certain accommodations. He was provided with a special chair for his back, one-on-one training, and additional time to input information into the computer. He was also permitted to wear wrist guards.

In March 1998, Van Houten applied for a vacant Veterans Claims Examiner position (GS-7/9). His new supervisor, Jeffrey Branin, as required, submitted a Supervisory Appraisal of Employee Promotion form. Although it is clear that Branin knew about Van Houten's EEO complaints at the time he wrote the appraisal, this form required him to calculate numerical ratings by applying largely objective data to a grid matrix. Van Houten received a rating of 3 out of 5 in each area analyzed: (1) knowledge of VA life insurance rules, regulations and procedures; (2) ability to demonstrate interpersonal oral communication skills; (3) ability to communicate in writing; and (4) skill in analyzing data and making decisions. Based on this report, he was not one of the eleven individuals selected for an interview, of whom two were hired. On July 14, 1998, Van Houten filed another EEO complaint, alleging that Branin's mediocre evaluation was in retaliation for Van Houten's previous EEO complaints.

In November 1998, the VA posted a notice of vacancy for a Veterans Claims Trainee/Examiner position (GS-5/7). Van Houten applied for one of seven openings and, again, Branin submitted a Supervisory Appraisal form. This time, Van Houten was selected for an interview, but he did not receive an offer. On July 12, 2000, he amended his August 26, 1998 EEO complaint to include alleged discrimination by Branin with regard to this latest Supervisory Appraisal form. After a hearing, an ALJ issued a finding of no discrimination, which was adopted by the Agency. Around this time, Van Houten was promoted to Lead Claims Adjustment Technician (GS-6).

## II. **Analysis**

A. *Discrimination Claim*

Under the Rehabilitation Act, an employer will be granted summary judgment if an employee is unable to establish at least a genuine issue of material fact as to "one or more elements of his prima facie case." Krouse v. American Sterilizer Co., 126 F.3d 494, 501 (3d Cir. 1997). To make out a *prima facie* case of discrimination under the Act, a plaintiff must set forth the following: 1) that he or she has a disability; 2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) that he or she was nonetheless terminated or otherwise prevented from performing the job. Gagliardo v. Connaught Laboratories, Inc., 311 F.3d 565, 568 (3d Cir. 2002). Disability is defined as:

> (1) A physical or mental impairment that substantially limits one or more of the major life activities . . .
> (2) A record of such impairment; or
> (3) being regarded as having such an impairment.

29 C.F.R. § 1630.2(g)(1998).

Van Houten claims he was impermissibly removed from the Phone Specialist training program because of his disability. At issue is whether he adequately established that the VA regarded him as an individual with a disability, *i.e.*, "a physical or mental impairment that substantially limits one or more of [his] major life activities."[2] A person

---

[2]Van Houten does not appeal the District Court's finding that he did not in fact have such an impairment. Nor has he ever asserted that he has a record of such an impairment.

can be "regarded as having such an impairment" in one of two ways, either: 1) his or her employer mistakenly believes he or she has a physical impairment that substantially limits one or more major life activities; or 2) his or her employer mistakenly believes that an actual nonlimiting impairment substantially limits one or more major life activities. Sutton v. United Air Line, Inc. 527 U.S. 471, 489 (1999). Here, the latter situation is implicated.

There is no disagreement that carpal tunnel syndrome is an "impairment," and that the relevant "major life activity" is that of working, see 29 C.F.R. § 1630.2(I). With respect to working, "[t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Id. at § 1630.2(j). Our inquiry is thus whether Van Houten set forth facts from which a jury could reasonably conclude that the VA regarded his carpel tunnel syndrome as an impairment that "significantly restricted [his] ability to perform either a class of jobs or a broad range of jobs." 19 C.F.R. § 1630.2(j). We believe he did not.

To be sure, the VA knew that Van Houten had carpal tunnel syndrome, but, even when viewed in the light most favorable to Van Houten, the facts do not establish that the VA thought his impairment substantially limited his ability to work. He held the position of Claims Clerk for seven years and was promoted in 2000. Further, the position of Claims Clerk generally requires more typing than that of Insurance Phone Specialist.

That the VA denied Van Houten a position because it considered him disabled, yet transferred him to a long-term position that would have been more difficult for a person with such a disability to perform, stretches the imagination.

B. *Retaliation Claim*

We turn now to Van Houten's retaliation claim. It is unlawful for an employer to discriminate against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or a hearing under [Title VII]." 42 U.S.C. § 2000e-3a. To establish a *prima facie* case of retaliation, a plaintiff must show the following: 1) that he or she engaged in protected activity; 2) that his or her employer took an adverse employment action against him or her; and 3) that there was a causal connection between the protected activity and the adverse action. Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001). The District Court correctly found that Van Houten failed to establish a *prima facie* case. At issue is whether Van Houten adequately set forth a causal connection between his complaints to the EEO and Branin's mediocre evaluation. He did not.

Van Houten relies primarily on the sequence of events. In Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997), we noted that "our cases are seemingly split on the question whether the timing of the allegedly retaliatory conduct can, by itself, support a finding of causation." It appears that if timing alone is ever sufficient, that timing must be "unusually suggestive." See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d

7

Cir. 2000) (holding that temporal proximity alone will generally "be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive'"); see also, Clark County School District v. Breeden, 532 U.S. 268, 273 (2001) ( holding that even "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'") (citations omitted).

The time period between Van Houten's most recent EEO complaint (March 1997) and the first non-selection in June 1998 is more than 15 months. Even were we to measure as of October 10, 1997, the date Branin first manifested his knowledge of the EEO complaints (as evidenced in an email), the period of time is more than eight months. By itself, this sequence of events is not unusually suggestive.[3]

Van Houten has also failed to set forth any additional evidence of retaliation. He merely claims that he had "demonstrably better qualifications than all of the selections" and that the above-referenced email sent by Branin demonstrates resentment towards his protected activities. Van Houten, however, provides no evidence that he was more qualified than applicants who received higher ratings, and Branin's email not only fails to show any animus but, to the contrary, evidences a lack of animus: "with workload

---

[3]It should be noted that Van Houten does not allege that the second appraisal differs from the first. Under these facts, therefore, his EEO complaint regarding his first non-selection could not have motivated Branin to produce the second appraisal.

8

currently being light at the cat level, [J]im's visits to the union office <u>aren't currently hurting our customers</u>." (emphasis added).

In sum, Van Houten failed to establish any causal connection between his protected activity and Branin's appraisals.

## III. **Conclusion**

For the foregoing reasons we will affirm both orders granting summary judgment.