# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3532

_____

| | | |
|---|---|---|
| Ryan Grey, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| City of Oak Grove, Missouri; James | * | |
| Dent, Mayor of Oak Grove, Missouri; | * | |
| Brad Alexander, Alderman; Gregg | * | Appeal from the United States |
| Rector, Alderman; Michael Johnston, | * | District Court for the |
| Alderman; Karen Pruitt, Alderman; | * | Western District of Missouri |
| John Ray, Alderman; David Frasher, | * | |
| City Administrator for the City of | * | |
| Oak Grove, Missouri; Thomas O. | * | |
| Gentry, Oak Grove, Missouri, Chief | * | |
| of Police; Shirley Johnson, Alderman, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: May 12, 2004
Filed: January 31, 2005

_____

Before  MORRIS SHEPPARD ARNOLD, McMILLIAN and MELLOY,
Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Ryan Grey appeals from a final order entered in the United States District Court[1] for the Western District of Missouri granting summary judgment in favor of the City of Oak Grove, Missouri, and individual city officials (collectively appellees) in his action alleging retaliatory discharge and other claims. Grey v. City of Oak Grove, No. 02-0257-CV-W-ODS (Sept. 23, 2003) (order granting summary judgment) ("Slip op."). For reversal, appellant argues that the district court erred in holding that he did not present evidence sufficient to create a genuine issue of material fact on the question of pretext. For the reasons discussed below, we affirm the order of the district court.

The district court had jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and we have appellate jurisdiction under 28 U.S.C. § 1291.

The city employed appellant as a police officer from January 1996 to March 27, 2001, when he was discharged. Until the city created a police department in 1999, appellant was the city's only police officer. From 1998 to March 27, 2001, appellant was also the handler of the city police dog, Axel. Sometime in 2000 appellant requested overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a), for the time he spent at home caring for Axel. The city manager denied the request, and appellant sought legal advice. In August 2000 appellant's attorney wrote a letter to the city about the overtime compensation claim. In November 2000 appellant and the city settled the overtime compensation claim for more than $11,000, plus attorney's fees.

Appellant is also the president, founder and co-owner with his wife of SNIF, Inc., a company that provides drug and explosive detection services using trained dogs. SNIF had contracts with local public school districts, including the Oak Grove

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

-2-

Public School District. As a public service, the city police department also provided such services to the school district free of charge.

On December 9, 2000, appellant responded to a suicide call during the course of his duties as a police officer. The incident was upsetting, and he was permitted to take off the rest of the day. On December 14, 2000, appellant by letter requested a medical leave of absence to "begin after the first of the year, if not sooner." City police chief Tom Gentry recommended to the city administrator that medical leave be granted. On December 29, 2000, Gentry wrote appellant that, because appellant had not obtained a doctor's certification as requested, the city required him to see a particular psychologist. In the meantime, appellant was off duty using compensatory time. According to appellant, the psychologist specified by the city was unable to provide the services he required. On January 18, 2001, appellant's personal doctor wrote a letter stating that appellant could return to work on March 1, 2001. On February 14, 2001, about two months after his request, the city granted appellant medical leave. The police department refused to allow appellant to return to work until he obtained a fitness-for-duty certification from a psychologist. Appellant asserted that Gentry told him that his return to duty was being treated differently because of "the canine issue," which appellant believed was a reference to his claim for overtime compensation. Appellant returned to work on March 1, 2001.

Meanwhile, on January 31, 2001, the city disbanded the police canine unit and removed Axel from appellant's care. The city maintained that the action was taken for budget reasons.

On February 22, 2001, appellant's brother Shawn Grey and his friend Rick Johnson had been drinking at a bar outside the city limits. They returned to Shawn Grey's house, and Shawn Grey and his wife Cheryl had a disagreement about Johnson's ability to drive home. Cheryl called appellant and told him that Johnson was driving while intoxicated. Appellant contacted the city police to report a possible

drunk driver (Johnson). Two city police officers stopped Johnson. During the stop, Johnson called Shawn Grey's house and accused Cheryl of calling the police. Appellant was at his brother's house and told Johnson that he had called the police. According to appellees, appellant threatened Johnson over the phone and also called the police officers and asked them to arrest Johnson.

Several days later appellant contacted the police officers that had stopped Johnson and learned that Johnson had not been charged with driving while intoxicated.

On February 27, 2001, Gentry notified appellant in writing of his intent to discharge appellant for violating city personnel and police department policies. The letter set forth the following reasons for discharge: appellant's conduct in the Rick Johnson incident (conflict of interest), working for SNIF without the prior approval of and in competition with the police department and while on sick leave (engaging in outside business activities during working hours, misuse of sick leave), taking his own dog to a training course paid for by the city (misuse of city funds or property), and failing to meet with the psychologist specified by the city. On March 6, 2001, appellant met with Gentry, the city administrator and another police officer to discuss the reasons for discharge. Appellant was discharged on March 27, 2001.

On April 2, 2001, appellant applied to the city board of aldermen for reinstatement. After a hearing on May 14, 2001, the board voted to reinstate appellant if he obtained a release from his doctor, passed a physical exam and signed a general release of claims. Appellant refused to sign a release, and he was not reinstated.

Appellant believed that appellees discharged him in retaliation for his FLSA claim for overtime compensation. In June 2002 appellant filed this lawsuit in federal district court against appellees, asserting claims for retaliatory discharge in violation

of the FLSA, violation of his right to access the courts, denial of due process, and defamation. Appellees filed a motion for summary judgment. The district court granted summary judgment in favor of appellees. The district court assumed for purposes of analysis that appellant established a prima facie case of retaliatory discharge, but concluded that appellant did not present evidence sufficient to create a genuine issue of material fact on the question of pretext for retaliation. Slip op. at 6-8. With respect to the claim that the individual members of the board of aldermen violated his right of access to the courts by requiring him to sign a general release as a condition of reinstatement, the district court held that appellant failed to identify the underlying cause of action that he would have lost by signing the general release. Id. at 8-9. The district court analyzed the due process and defamation claims together and held that appellant failed to identify any false or stigmatizing statements about him publicly disseminated by appellees. Id. at 9-10. This appeal followed.

For reversal, appellant argues that the district court erred in granting summary judgment in favor of appellees on his retaliatory discharge claim. He argues that he presented sufficient evidence to create a genuine issue of material fact on the question of pretext. He notes that only a few months separated the settlement of his FLSA claim for overtime compensation and the decision to discharge him. He also argues that the reasons appellees articulated for his discharge were not true, that several aldermen had expressed doubts about the legitimacy of the reasons for discharge and that the board's willingness to reinstate him showed that the reasons for discharge were unfounded. Appellant has not raised in this appeal any arguments about the dismissal of his other claims.

We review the district court's grant of summary judgment de novo. The district court's decision should be affirmed if, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is not appropriate if the nonmoving party can set forth specific facts, by affidavit,

deposition, or otherwise, showing the existence of a genuine issue for trial. The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleadings, but the [nonmoving] party's response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter." 29 U.S.C. § 215(a)(3). We apply the familiar McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) (McDonnell Douglas), burden-shifting framework to appellant's retaliatory discharge claim. Cf. Calder v. TCI Cablevision of Missouri, Inc., 298 F.3d 723, 731 (8th Cir. 2002) (Calder) (ADEA retaliatory discharge claim); Kipp v. Missouri Highway & Transp. Comm'n, 280 F.3d 893, 896 (8th Cir. 2002) (Title VII retaliation claim); Broadus v. O.K. Indus., Inc., 238 F.3d 990, 991 (8th Cir. 2001) (per curiam) (claim that husband was discharged in retaliation for supporting his wife's Equal Pay Act lawsuit and opposing defendants' treatment of women employees); Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983, 988-89 (8th Cir. 1999) (Dhyne) (Title VII retaliatory discharge claim). To establish a prima facie case of retaliation, appellant had to show that he participated in statutorily protected activity, that appellees took an adverse employment action[2] against him, and that there was a causal connection between them. Appellant's FLSA claim for overtime compensation was protected activity, and his discharge was an adverse employment action. Like the district court, we will assume for purposes of analysis that sufficient

_____

[2]Compare White v. Burlington N. & Santa Fe Ry., 364 F.3d 789, 795-800 (6th Cir. 2004) (en banc) (discussing different meanings of "adverse employment action" under Title VII discrimination and retaliation claims), with id. at 808-17 (Clay, J., concurring) (urging adoption of expansive definition for retaliation claims).

evidence of a causal connection between the protected activity and discharge existed to establish a prima facie case. Appellees articulated legitimate, non-retaliatory reasons for appellant's discharge, that is, he violated the city personnel and police department policies. Under the McDonnell Douglas framework, the sole remaining issue was retaliation or, more precisely, whether the legitimate, nonretaliatory reasons articulated by appellees were not the true reasons for discharge, but merely a pretext for retaliation. In the summary judgment context, the issue was whether the evidence was sufficient to create a genuine issue of material fact on the question whether appellees discharged appellant in retaliation for making his FLSA claim for overtime compensation.

We agree with the district court that the evidence was not sufficient to create a genuine issue of material fact on the question whether the reasons articulated by appellees were a pretext for retaliation. "We have held that a gap in time between the protected activity and the adverse employment action 'weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint.'" Calder, 298 F.3d at 731(quoting Dhyne, 184 F.3d at 989); cf. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam) (fact that transfer occurred 20 months after filing of EEOC complaint and 3 months after issuance of EEOC right-to-sue letter insufficient to establish causation element of retaliation claim). Here, although only several months separated the settlement of appellant's FLSA claim (November 2000) and the decision to discharge him (February 27, 2001), the time gap between his attorney's letter (August 2000) and the decision to discharge him was 7 months. The time gap between the initial submission of his claim for overtime compensation (possibly March 2000) and the decision to discharge him may have been as long as a year.

The evidence of appellant's violations of the city personnel and police department policies reinforces the doubt created by these time gaps. Contrary to appellant's argument, the board's offer to reinstate appellant was not evidence that

appellant did not violate the city personnel or police department policies. The board did not decide that appellant did not do the acts specified by Gentry or that those acts did not violate the city personnel or police department policies. The testimony of several aldermen about Gentry's "plotting" against appellant did not connect Gentry's actions with appellant's FLSA claim for overtime compensation.

Appellant denied doing the acts he was accused of doing or asserted that he had good reasons for his actions. However, appellant's denials and justifications were not evidence that appellees fabricated the charges. The question is whether appellees' articulated reasons for discharge were a pretext for retaliation, not whether appellant actually did what he was accused of doing or whether discharge was warranted. See Dhyne, 184 F.3d at 989 (employee's denial that she did what employer accused her of doing, standing alone, is not evidence of pretext, that is, that employer fabricated charge).

Finally, it is not disputed that Gentry's comment about the handling of appellant's return-to-duty status referred to appellant's medical leave and not the reasons for his discharge. We also note that appellees granted appellant medical leave and that appellant did return to duty as scheduled.

Accordingly, we hold the district court properly granted summary judgment in favor of appellees and affirm the order of the district court.

_____