**Joy Eyvonne SOMMERSETT, Plaintiff,**

v.

**CITY OF NEW YORK, New York City Department of Probation, Defendants.**

**No. 09 Civ. 5916(LTS)(KNF).**

United States District Court, S.D. New York.

Jan. 14, 2010.

470

Joy Eyvonne Sommersett, Jamaica, NY, pro se.

Ivan A. Mendez, Jr., NYC Law Department, Office of the Corporation Counsel, New York, NY, for Defendants.

## MEMORANDUM and ORDER

KEVIN NATHANIEL FOX, United States Magistrate Judge.

## I. INTRODUCTION

Joy Eyvonne Sommersett ("Sommersett"), proceeding *pro se* and *in forma pauperis,* commenced this action, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e–17 ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA"), alleging the City of New York and the New York City Department of Probation ("the Probation Department") (collectively, "the defendants"), discriminated against her, based on her race and age, by failing to promote her, applying "unequal terms and conditions [to her] employment," retaliating against her, and harassing her, by providing "unfair evalua-

tions." Sommersett requests that the Court appoint counsel to assist her; the defendants have not opposed this request. Sommersett's application is addressed below.

## II. BACKGROUND

In her complaint, and the United States Equal Employment Opportunity Commission ("EEOC") charge of discrimination attached thereto, Sommersett, an African–American woman, alleges she was born in 1945, and, in April 1984, was appointed, by the Probation Department, to the position probation officer. Sommersett alleges further that, approximately "15 years ago," she filed a complaint with the New York State Division of Human Rights, alleging Arthur Levitt ("Levitt"), "a white, Jewish male supervisor (now deceased)," called Sommersett a " 'black bitch.' " Sommersett resolved the matter via a "financial settlement." According to Sommersett, she "filed a second complaint a couple of years ago," alleging age discrimination, but was unsuccessful in securing a favorable judgment.

In retaliation for filing these complaints, Sommersett alleges she was: (a) "summarily suspended from the New York City Department of Probation field office in the Bronx in early December, 2008;" (b) transferred to the Queens field office; and (c) placed on "a three month probation starting 12/03/08." It appears that Sommersett's suspension was related to an incident involving a probationer assigned to Sommersett, who was accused of murdering three individuals. After an investigation, the Probation Department's Commissioner determined that Sommersett was "responsible for the unfortunate deaths, [since she] should have detected certain information about the probationer's storage of guns in his house." Sommersett states that she "wishes to remain" in Queens.

In the EEOC discrimination charge, attached to Sommersett's complaint, the plaintiff details incidents during which she felt her co-workers engaged in inappropriate behavior, including: (1) raising their voices and/or cursing when speaking with her;[1] (2) making "seething facial expressions of anger, staring, glared facial modes," and calling Sommersett a " 'trouble maker' "; and (3) telephoning her while she was on vacation to inform her that her "monthly report" was insufficient, which prompted the plaintiff to interrupt her vacation and return to work, for one day, to modify her monthly report. Sommersett was not compensated for the time she worked during her vacation. In addition, Sommersett contends that, when she was transferred to the Queens field office, she was not assigned work immediately; however, once she was given assignments, her supervisor, at that office, praised her work. While at the Queens field office, Sommersett requested a transfer, which was granted, and she was assigned to the Queens Family Court. However, since this transfer occurred before a performance evaluation rating period had ended, Sommersett's job performance was deemed "unratable," because " 'she has not had a caseload [at the Queens Family Court] for a

sufficient amount of time to be considered ratable.' "

Sommersett alleges she "took the promotional exam twice for Supervising Probation Officer, years ago and was never assigned or advised why she was not selected" for promotion. In the EEOC charge of discrimination, attached to the plaintiff's complaint, Sommersett states she is paid "more than current supervisors," and she is working in Queens, where she wishes to continue working. Sommersett seeks monetary damages for stress, humiliation, pain and suffering, and "being under[-] evaluated."

## III. DISCUSSION

Unlike criminal defendants, indigents filing civil actions have no constitutional right to counsel. However, 28 U.S.C. § 1915(e)(1) provides that the Court may request an attorney to represent any person unable to afford counsel. The plaintiff made an application to proceed *in forma pauperis*, which was granted. Therefore, she is within the class to whom 28 U.S.C. § 1915(e)(1) applies.

"In deciding whether to appoint counsel, [a] district [court] should first determine whether the indigent's position seems likely to be of substance." *Hodge v.*

---

**1.** Examples of instances when Sommersett's co-workers raised their voices, or cursed Sommersett, include: (1) during a discussion with Probation Department Branch Chief Nora Santos ("Santos"), Santos was "unprofessional and verbally abusive," and, when Santos asked Sommersett a question, Santos interrupted Sommersett's response by shouting " 'STOP! Just say YES OR NO!' "; (2) as Sommersett was "walk[ing] up a hall," in 2008, Supervising Probation Officer Carswell ("Carswell") "called to [her]," Sommersett turned to respond to Carswell, and Carswell stated, " 'I don't give a shit,' " and, when Sommersett asked Carswell about this remark, Carswell "pretended she was talking to someone else"; (3) in connection with a filed complaint, Sommersett heard a co-worker speak loudly about the discrimination complaint having been filed and that " 'we have to get Sommersett' "; (4) when Sommersett "was directed to stand in line in order to schedule a car for field work" Carswell cursed at Sommersett; (5) on June 13, 2008, Sommersett entered an office, where Supervising Probation Officer Booker ("Booker") was stationed, and Booker asked Sommersett, " 'What do you want[ ], you didn't do anything for five years' "; and (6) in October 2008, there was confusion about when a training course was to begin, and Sommersett was told by Santos " 'You go to training, you can't stay here,' in a loud harsh manner before staff in the immediate area."

*Police Officers,* 802 F.2d 58, 61 (2d Cir. 1986), *cert. denied,* 502 U.S. 986, 112 S.Ct. 596, 116 L.Ed.2d 620 (1991). This means that it appears to the court "from the face of the pleading[s]," (*see Stewart v. McMickens,* 677 F.Supp. 226, 228 [S.D.N.Y.1988]), that the claim(s) asserted by the plaintiff may have some merit, or that the plaintiff "appears to have some chance of success. . . ." *Hodge,* 802 F.2d at 60–61. The pleadings drafted by a *pro se* litigant, such as Sommersett, are to be construed liberally and interpreted to raise the strongest arguments they suggest. *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

■ Where a plaintiff satisfies the threshold requirement of demonstrating that the plaintiff's position is likely to be of substance, the court should then consider: (1) the indigent's ability to investigate the crucial facts; (2) whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact-finder; (3) the indigent's ability to present the case; (4) the complexity of the legal issues; and (5) any special reason in that case why appointment of counsel would be more likely to lead to a just determination. *Hodge,* 802 F.2d at 61–62.

■ Title VII of the Civil Rights Act of 1964 and the ADEA prohibit discrimination by an employer, against an employee, based upon, *inter alia,* that employee's race, or age. "A plaintiff may establish a claim of disparate treatment under Title VII either (1) by showing that [she] has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of race . . ., or (2) by demonstrating that harassment on [the basis of race] amounted to a hostile work environment." *Feingold v. State of New York,* 366 F.3d 138, 149 (2d Cir.2004).

"[T]o prevail on a hostile work environment claim, a plaintiff must first show that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal quotations and citations omitted). In determining whether a work environment is "hostile," in the sense of a Title VII violation, courts consider factors such as " 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance.' " *Id.* at 150 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 [1993]).

■ Applying these standards to the facts presented in the plaintiff's complaint, it appears that the plaintiff has alleged several instances of "offensive utterance[s]"; however, she has not alleged facts showing discriminatory conduct of sufficient severity to constitute a Title VII violation. *Id.* In addition, the recent "utterances" Sommersett describes in her complaint do not involve any reference, explicit or implicit, to her race or age. The single comment that does refer to Sommersett's race-made by Levitt, when he called Sommersett a " 'black bitch' "—occurred "15 years ago"; thus, for the purpose of this action, it is not timely raised. *See McPherson v. New York City Dep't of Education,* 457 F.3d 211, 213 (2d Cir.2006) (noting that, under "Title VII and the ADEA, a plaintiff can sue in federal court only after filing timely charges with the EEOC," and a "complainant has 300 days from the occurrence of an adverse employment action to file charges with the EEOC").[2]

**2.** Attached to Sommersett's complaint is a document entitled "EEOC Charge," which is

In relation to alleging an "adverse job action" was taken, under circumstances giving rise to an inference of race discrimination, the EEOC charge states Sommersett's employment was suspended briefly; however, it appears this action was taken after a probationer, placed under Sommersett's supervision, was accused of murdering three people, and Sommersett had failed to discover the probationer was storing guns in his home. Thus, it does not appear that the plaintiff's suspension was done under circumstances that give rise to an inference of race discrimination. Additionally, Sommersett makes no allegation that her suspension resulted in a decrease in, or cessation of, her salary. In fact, Sommersett alleges she earns the maximum amount a probation officer may earn, and her salary is higher than that of most supervisors. While Sommersett was transferred to the Queens field office six days after she was suspended, Sommersett states that she would like to remain in Queens. As a result, it appears the transfer was not "adverse" to Sommersett. Consequently, the complaint seems to lack an allegation that an adverse action was taken against Sommersett, based upon her race. Accordingly, the likeliness of the plaintiff's Title VII claim having merit is suspect.

With regard to Sommersett's age discrimination claim, while the complaint makes allegations that "older employees" are transferred to "a borough that is inconvenient or risky because of their health," as noted above, the plaintiff's complaint states that Sommersett wishes to remain in Queens, the borough to which she was transferred, at the time she filed her complaint. Therefore, the Court finds that Sommersett has not alleged that an adverse action was taken against her, based upon her age. *See* 29 U.S.C. § 623(a) ("It shall be unlawful for an employer ... to ... discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age"). Accordingly, the likelihood of the plaintiff's ADEA claim having merit is also suspect.

The only facts supplied in support of Sommersett's "failure to promote" claim, are that Sommersett took the "promotion exam twice for Supervising Probation Officer, years ago," and she was not "advised [ ] why she was not selected" for promotion. Sommersett does not allege, nor are there sufficient facts from which to draw an inference, that she was not promoted based upon her age or race. Similarly, Sommersett's allegation that she was retaliated against for filing earlier discrimination complaints also appears to lack merit. This is so because of the absence of temporal proximity between those complaints made "15 years ago" and "a couple of years ago," and the instant claim of retaliation. *See, e.g., Clark County School Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001).

In the circumstance of the case at bar, the Court is not persuaded, from the face of the pleadings, that the claims asserted

---

dated June 1, 2009. In addition, Sommersett provides a "Dismissal and Notice of Rights" letter from the EEOC, which is dated March 4, 2009. Sommersett's complaint is dated June 1, 2009. In her complaint, Sommersett states that she filed a charge with the EEOC regarding the defendants' discriminatory conduct in 2007; however, she also states that the "alleged discriminatory acts occurred on:

1/1/08–present." An analysis of whether Sommersett's claims were filed timely with the EEOC, "within 300 days of the alleged adverse employment action(s)," is impracticable. However, since it appears that Sommersett's claims are without merit, the Court's analysis, of whether counsel should be appointed, is unaffected by the noted discrepancies.

by Sommersett warrant the appointment of counsel. Therefore, the plaintiff's request, that the Court appoint counsel to represent her, Dkt. Entry No. 16, is denied.

SO ORDERED.