**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1827**

MARILYN MORGAN SESSION,

            Plaintiff - Appellant,

      v.

MONTGOMERY COUNTY SCHOOL BOARD,

            Defendant – Appellee,

      and

TIFFANY E. ANDERSON,

            Defendant.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Samuel G. Wilson, District Judge. (7:09-cv-00138-sgw-mfu)

Argued: December 7, 2011            Decided: January 25, 2012

Before NIEMEYER, AGEE, and WYNN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Stephen Z. Chertkof, HELLER, HURON, CHERTKOF, LERNER, SIMON & SALZMAN, PLLC, Washington, D.C., for Appellant. Jeremy E. Carroll, GLENN, FELDMANN, DARBY & GOODLATTE, Roanoke, Virginia, for Appellee. **ON BRIEF:** Jonathan M. Rogers, Floyd, Virginia; Douglas B. Huron, HELLER, HURON, CHERTKOF, LERNER, SIMON & SALZMAN, PLLC, Washington, D.C., for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Marilyn M. Session appeals the district court's grant of summary judgment for the Montgomery County School Board ("School Board") in her Title VII action. Session contends that the School Board unlawfully retaliated against her because she filed a grievance against the Superintendent, Dr. Tiffany Anderson, for making two comments that, according to Session, constituted racial harassment. Because no reasonable person could have believed that the two comments were so objectively offensive as to alter the conditions of Session's employment, we hold that the district court properly granted summary judgment in favor of the School Board and dismissed Session's Title VII complaint.[1]

I.

Session has been employed by the Montgomery County Public Schools since 1977. In September 2004, Session was promoted to Supervisor of Social Studies and Library Media. Soon thereafter, in March 2005, Anderson became the Superintendent of the Montgomery County Public Schools.

Session, an African-American, alleges that in June and July of 2005, Anderson, also an African-American, made two racially

---

[1] Anderson was previously a named defendant. The district court dismissed her from the suit on February 11, 2010, and that order is not before us on appeal.

3

derogatory comments that, according to Session, amounted to racial harassment. Regarding the first alleged incident, Session claimed that she was at her school desk speaking with a friend when Anderson walked in. Anderson asked Session and her friend, both of whom are African-American, about finding a local hairdresser. Anderson asked Session how she styled her hair, and Session responded that she "wash[ed]/dr[ied] it." J.A. 53. Anderson then commented "oh, you have that good hair." J.A. 53-54. Session complained that the comment meant that Session did not "'have hair like other black people'" and that it was a "condescending remark." J.A. 54.

The second alleged incident occurred the following month at a staff meeting. During the meeting, Anderson proposed a team-building exercise for the next meeting. Session stated that Anderson asked the staff, including Session, "to bring baby pictures [of themselves] during the next month for a contest on who could accurately guess the identities of the pictures." Id. According to Session, Anderson stated that they would need to use "plant," i.e. fake, pictures because "'some of us have more melanin in our skin than others.'" Id. Session contended that, "[b]eing a fair-skinned African-American person, I knew that participating in that contest would make me the recipient of comments/questions about my baby picture not 'looking black.'"

4

Id. Session believed that this comment created an uncomfortable environment.

On September 9, 2005, Session lodged an official harassment complaint about these two comments with the School Board. The School Board considered Session's complaint and determined that it was unfounded. Around that same time, the School Board approved Anderson's request to eliminate Session's supervisor position and create a new position in its place. Session applied for the new position, but the School Board ultimately hired someone else.

In Spring 2006, Session was reassigned from her supervisory role to a teaching position and took a forced pay cut. In July 2006, Session received a negative performance evaluation, and in August 2006, she was assigned to an alternative education program for troubled students. Session alleges that these actions were in retaliation for her internal complaint against Anderson.

Session filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). The EEOC found reasonable cause to believe that the School Board had retaliated against Session, and Session in turn filed this suit. On June 21, 2010, the district court granted the School Board's motion for summary judgment "because Anderson's alleged comments did not violate Title VII, and because Session could not have

5

reasonably believed that they did . . . ." J.A. 81-82. Session appeals from this ruling.

## II.

We "review[] a district court's decision to grant summary judgment de novo, applying the same legal standards as the district court." Pueschel v. Peters, 577 F.3d 558, 563 (4th Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

"Under Title VII of the Civil Rights Act . . ., it is unlawful 'for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 269 (2001) (citation omitted). To make out a prima facie case of retaliation, a plaintiff must show: (1) that she engaged in a protected activity; (2) that the defendant took a materially adverse action against her; and (3) that a causal connection existed between the protected activity and the

6

materially adverse action. E.E.O.C. v. Navy Federal Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005).

Protected activity can be either "opposition" activity or "participation" activity. Id. at 406. Opposition activity includes internal complaints about alleged discriminatory activities—the activity at issue in this case. Id. Such opposition activity is protected when the employee opposes an "actual unlawful employment practice" or "an employment practice that the employee *reasonably believes* is unlawful." Jordan v. Alternative Res. Corp., 458 F.3d 332, 338 (4th Cir. 2006). "Because the analysis for determining whether an employee reasonably believes a practice is unlawful is an objective one, the issue may be resolved as a matter of law." Id. at 339. See also Breeden, 532 U.S. at 271 (reinstating district court's entry of summary judgment where plaintiff could not have reasonably believed that she was opposing an employment practice that violated Title VII).

Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998). To evaluate whether that standard has been met, courts look "'at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

7

utterance; and whether it unreasonably interferes with an employee's work performance.'" Breeden, 532 U.S. at 270-71 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)). Relatedly, a "'recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.''" Breeden, 532 U.S. at 271 (quoting Faragher, 524 U.S. at 788).

In Breeden, the Supreme Court held that no reasonable person could believe that a Title VII violation occurred when a supervisor read a comment from a job applicant's file stating "I hear making love to you is like making love to the Grand Canyon," after which the supervisor stated that he did not understand the comment, a male colleague stated that he would explain later, and both men chuckled. Breeden, 532 U.S. at 269. The Supreme Court made clear that the incident was "at worst an 'isolated inciden[t]' that cannot remotely be considered 'extremely serious,' as our cases require." Id. at 271 (citation omitted).[2]

---

[2] Session dedicates a substantial portion of her brief to arguing why Jordan does not apply and why it should be overturned. None of this furthers Session's cause, because Breeden, a Supreme Court case pre-dating Jordan, points us to precisely the same result in this case. Compare Jordan, 458 F.3d 332, with Breeden, 532 U.S. 268.

Similarly, in this case, Session's harassment complaint referred only to the two previously-discussed comments by Anderson: the first comment, in the context of Anderson's seeking recommendations for a hairdresser, that Session had "'that good hair'" (J.A. 53-54); and the second comment, about the need to use plant pictures in the baby picture icebreaker because "'some of us have more melanin in our skin than others.'" J.A. 54. Those two comments are the entire universe of Session's complaint.

Looking objectively at these comments, the first appears to this Court to be an innocuous comment as opposed to an insult. The second comment seems to us to be a clear reference to the fact that Anderson herself, with a darker complexion, would stand out in the baby picture guessing game. We fail to see how the second comment was directed at, not to mention in any way derogatory about, Session.

It may well be that Session found the comments subjectively offensive. Nevertheless, Anderson's two comments are inadequate as a matter of law for Session to have held an objectively reasonable belief that she confronted an abusive work environment that violated Title VII: The comments were not frequent, severe, physically threatening, or objectively humiliating; and the comments could not have reasonably interfered with Session's work performance. The comments did

9

not alter the terms, conditions, or privileges of Session's employment.  See Breeden, 532 U.S. at 270-71.  We therefore affirm the district court's grant of summary judgment for the School Board.

## III.

In sum, because no reasonable person could have believed that the two comments at issue in this case violated Title VII, we affirm summary judgment in favor of the School Board.

AFFIRMED