ROGERS, Circuit Judge,
dissenting.
It is hard to see what U.S. Bank may have done wrong here. To comply with federal anti-money-laundering and other laws, U.S. Bank regularly monitors its customers’ bank accounts. In the course of such monitoring, it discovered that one of its employees, Serge Adamov, had made a personal loan to a customer, potentially creating a conflict of interest. In response, U.S. Bank carried out an investigation and then terminated Adamov. However, Ada-mov claims that U.S. Bank retaliated against him, based on a remark Adamov made during this investigation that he believed he was being questioned because of a prior complaint of discrimination based on his Russian/Azerbaijani national origin. This was not enough to avoid summary judgment.
First, it is not enough to rely on a temporal proximity of only one month between Adamov’s complaint and his termination, which takes Adamov’s complaint to the corporate security department as his protected activity, and thereby counts only the period between his protected activity in July 2009 and his termination in August 2009. The investigation that resulted in Adamov’s termination actually began before Adamov’s complaint to the corporate security department, in June 2009. R. 108-1, PagelD # 1065. An employer’s “proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.” Clark County School District v. Breeden, 532 U.S. 268, 272, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam); see also Montell v. Diversified Clinical Services, Inc., 757 F.3d 497, 507 (6th Cir. 2014). The *482 fact that the corporate security department launched an investigation into Ada-mov’s personal banking and questioned him about the personal loan to a bank customer—both before he complained of discrimination—shows that discipline was at least “previously contemplated,” and thus that the one-month span between his complaint and termination can be “no evidence whatever of causality.”
It is true that the recommendation and decision to terminate Adamov did not occur until after his complaint, and that nothing in the ethics policy suggested that his termination was a foregone conclusion. But the Supreme Court and this circuit have explicitly stated that a course of action need only be “previously contemplated,” but not “definitively determined.” See Breeden, 532 U.S. at 272, 121 S.Ct. 1508; Montell, 757 F.3d at 507. This case is fully disposed of by .the language in Breeden and Montell.
Furthermore, even if Adamov’s termination was somehow not “previously contemplated,” the prior investigation should still weigh heavily against using a one-month period as evidence of temporal proximity. True, we have held in an unpublished case that a one-month difference alone “allow[s] us to make an inference of causation,” Herrera v. Churchill McGee, LLC, 545 Fed.Appx. 499, 502 (6th Cir. 2013). But we have also cautioned, again and again, against relying on temporal proximity alone. See, e.g., Vereecke v. Huron Valley School Dist., 609 F.3d 392, 400 (6th Cir. 2010); Tuttle v. Metro. Gov’t of Nashville, 474 F.3d 307, 321 (6th Cir.2007); Randolph v. Ohio Dep’t of Youth Servs., 453 F.3d 724, 737 (6th Cir.2006). This is an especially bad case to decide based on temporal proximity, because the prior investigation provides a clear, independent cause for Adamov’s termination, even if it somehow does not establish that Admaov’s termination was not “previously contemplated.”
There is little additional evidence of causation. Adamov relies on purported evidence of increased scrutiny, but the record does not support this contention. Even after discovery, there is no evidence of any communication between Hartnack, Saloutos, and Mockapetris—Adamov’s three supervisors who knew about his first complaint of discrimination—and the corporate security department. In fact, the record shows that a computer-generated sweep of customers’ (including Ada-mov’s) bank accounts first prompted the corporate security department to investigate, R. 108-1, PagelD # 1067, and that Adamov’s three supervisors were only notified once the investigation was well under way, R. 46, PagelD #358; R. 48, PagelD # 418; R. 52, PagelD # 641. Furthermore, these sweeps and investigations appear common. U.S. Bank carries out such activity to comply with federal anti-money-laundering law, see R. 46, PagelD #357-58, and Adamov’s unusual banking activity had prompted several previous investigations, including in December 2005, November 2008, and December 2008. R. 108-1, PagelD # 1065. Therefore, the final investigation that resulted in Adamov’s termination was routine, not “increased,” scrutiny. This weak evidence of “increased scrutiny” does not bolster the flawed evidence of temporal proximity.
In any event, as we indeed reasoned in our previous decision, Adamov v. U.S. Bank Nat. Ass’n, 726 F.3d 851, 853 (6th Cir. 2013), Adamov has not sufficiently shown pretext. U.S. Bank has put forth a legitimate, non-discriminatory reason for Adamov’s termination: Adamov’s personal loan to a bank customer, which has just as much potential as a clearly forbidden personal loan from a customer to “create the potential for a conflict of interest between *483 your interests, the customer’s interests, and those of U.S. Bank.” R. 108-4, PagelD # 1106. The only possible basis for distinguishing our prior decision that there was no pretext is the purported discrepancies in U.S. Bank’s 2006 and 2008 ethics policies: The 2006 policy that governed Ada-mov’s behavior at the time of the loan technically proscribed only “borrowing from” customers, R. 108-4, PagelD # 1105; it was not until 2008 that the ethics policy specifically proscribed “borrowing money from (or lending money to) customers,” R. 108-5, PagelD # 1132. This is not a case in which the close parsing of technical language is appropriate. Rather, we are merely asking whether Adamov has shown that U.S. Bank’s proffered reason was not the real reason for its actions, and the difference in policies is very weak evidence of such a claim. U.S. Bank has also met its burden under the honest-belief rule of “pointing] to specific facts that it had at the time the decision was made which would justify its belief in the proffered reason.” See Clay v. United Parcel Serv., Inc., 501 F.3d 695, 714 (6th Cir. 2007) (stating the burden). These specific facts include Adamov’s personal loan to a customer and the policies demonstrating that U.S. Bank was legitimately concerned about the conflicts of interest caused by personal loans to and from customers. See U.S. Bank Br. 23-28.
Accordingly, I would affirm the judgment of the district court.