[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-14662

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 17, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00176-CV-UWC-S

JONATH S. NICHOLAS,
an individual,

Plaintiff-Appellant,

versus

BOARD OF TRUSTEES OF
THE UNIVERSITY OF ALABAMA,
a state entity,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(October 17,  2007)**

Before EDMONDSON, Chief Judge, CARNES and FAY, Circuit Judges.

PER CURIAM:

Plaintiff Jonath Nicholas ("Plaintiff") appeals the district court's grant of summary judgment to the Board of Trustees of the University of Alabama ("Defendant") against Plaintiff's Title VII claims of disparate treatment and retaliation. We affirm.

Background

Jonath Nicholas, an African-American male, was hired as the assistant coach of the women's basketball team ("Team") at the University of Alabama-Birmingham ("UAB") on 27 December 2001.[1] When Plaintiff was hired by UAB, Jeannie Milling was the head coach of the Team; and Amy Champion was the associate coach of the Team.[2] In 2003, Milling investigated allegations that Plaintiff had made improper sexual advances towards a student on the Team.[3] On 30 September 2003, Milling suspended Plaintiff with pay and then banned Plaintiff from having contact with Team players.

[1]Before working at UAB, Plaintiff worked as an assistant coach and recruiting coordinator at a community college for ten years.

[2]Plaintiff alleges that Milling and Champion shared a residence together in violation of UAB's written nepotism policy.

[3]During his deposition testimony, Plaintiff admitted viewing the student's webcam; but he claimed that he did not see anything of a sexual nature. The student confirmed that Plaintiff never made sexual advances towards her.

On 24 October 2003, Milling explained in a letter that Plaintiff had the option of resigning his position or receiving new coaching responsibilities (not including managing players) until his employment contract with UAB expired in June 2004. Plaintiff chose to be re-assigned. Head Coach Milling complained to UAB administrators in November and December 2003 that Plaintiff continued to violate her order not to have contact with players.

Around 13 November 2003, Plaintiff sent a letter to UAB Athletic Director Watson Brown alleging that Milling had engaged in discriminatory conduct. Plaintiff also filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on 23 December 2003 and an amended charge on 30 June 2004.

In a 6 January 2004 letter from Athletic Director Brown to Plaintiff, Brown listed Plaintiff's future responsibilities as helping with the "25th Anniversary Celebration, in whatever capacity needed" and being used in an "Operations capacity." Plaintiff's remaining coaching duties were removed.

In March 2004, Head Coach Milling was fired from UAB. Plaintiff applied to become head coach; but UAB instead selected Audra Smith, an African-American female, for the position. Athletic Director Brown testified that he hired Smith as head coach because, although Plaintiff had worked at UAB, Brown had experience with

the women's basketball program at the University of Virginia, one of the top programs in the country.

Plaintiff filed a Title VII claim against Defendant alleging (1) disparate treatment based on race and gender for a salary difference between Plaintiff and Amy Champion, the former UAB associate coach of the Team ("disparate pay claim"), (2) disparate treatment based on race and gender for being suspended after it was alleged that he sexually harassed students ("disparate discipline claim"), (3) disparate treatment based on race and gender for Plaintiff's 2004 termination ("disparate discharge claim"), (4) disparate treatment based on gender for not being hired as head coach in 2004 ("disparate hiring claim"), (5) retaliation for eliminating Plaintiff's coaching duties before his employment contract expired in 2004 and for terminating Plaintiff as assistant coach and not hiring Plaintiff as head coach ("retaliation claim").

Defendant filed a motion for summary judgment alleging that Plaintiff had failed to establish his prima facie case of disparate treatment discrimination and that Defendant had established legitimate, nondiscriminatory reasons for paying Plaintiff and Champion different salaries, for suspending Plaintiff, and for not hiring Plaintiff as head coach. Defendant also argued that Plaintiff had not presented a prima facie case of retaliation because Plaintiff did not show that he suffered an adverse employment act as a result of his filing EEOC charges and because either too much

time elapsed between Plaintiff's original EEOC charge and the alleged retaliatory acts or the alleged retaliatory acts occurred before Defendant received notice of Plaintiff's EEOC charge.

The district court concluded that Plaintiff had not established a prima facie case of discrimination on his disparate pay claim or his disparate discipline claim. The district court also determined that Plaintiff's disparate discharge claim failed because Plaintiff had not been discharged. On Plaintiff's disparate hiring claim and his retaliatory discharge claim, the district court concluded that Plaintiff had established his prima facie case, that Defendant had offered legitimate nondiscriminatory reasons for not hiring Plaintiff, and that Plaintiff had failed to offer sufficient evidence to show that a material question of fact existed on whether Defendant's proffered reasons were pretextual.[4]

The district court granted Defendant's motion for summary judgment on 30 June 2006. Plaintiff appealed.

---

[4]The district court did not specifically address Plaintiff's claim that his remaining coaching duties were removed in retaliation for the filing of his EEOC charge. Plaintiff raises this retaliation issue on appeal but does not discuss the district court's omission.

<u>Discussion</u>

We review a grant of summary judgment <u>de novo</u> and will affirm if no genuine issue of material fact exists such that the moving party is entitled to a judgment as a matter of law.  <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1085 (11th Cir. 2004).

1.      Disparate Pay Claim

Plaintiff fails to establish a prima facie case for disparate pay because he has not demonstrated that he occupied a job similar to that of a more highly paid person. Plaintiff argues that he was discriminated against based on his race and gender because he was paid less than Champion, who is a white female.[5]   Plaintiff acknowledges that he and Champion had different job titles: he was an assistant coach; and she was an associate head coach.  Nevertheless, he contends that their job responsibilities, including an emphasis on recruiting, were essentially the same. Defendant responds that Plaintiff and Champion were not similarly situated because

---

[5]Plaintiff was paid $33,189.96 during the 2002 to 2003 academic year; and Champion was paid approximately $60,000 during this period.

Champion was the recruiting coordinator, which exceeded the recruiting responsibilities assigned to Plaintiff.

To establish a prima facie case of disparate pay, Plaintiff must show that he occupies a job similar to that of higher paid persons who are not members of his protected class. <u>Meeks v. Computer Assocs. Int'l</u>, 15 F.3d 1013, 1019 (11th Cir. 1994). Plaintiff has failed to make his prima facie case because he and Champion did not hold similar jobs. Champion and Plaintiff had different job titles and responsibilities; and Champion was the Team's only recruiting coordinator. In addition, Champion had served as a coach at UAB for several years longer than Plaintiff.[6]

2.    Disparate Discipline Claim

Plaintiff fails to establish a prima facie case for disparate discipline because he makes no allegations that Defendant failed to discipline a similarly situated employee for similar conduct. Plaintiff argues that he has established race- and gender-based disparate treatment because he was suspended after allegations arose that he sexually

_____

[6]Champion was hired as an assistant coach at UAB in 1994; and she was promoted to associate head coach in 1999. Plaintiff was hired as an assistant coach at UAB in 2001.

7

harassed student players. Plaintiff contends that another African-American male assistant coach Charles Junkins faced "similar problems with false allegations" raised by Milling and Champion. Defendant contends that Plaintiff was suspended because (1) the sexual misconduct allegations raised against Plaintiff were serious; (2) Plaintiff was insubordinate to Milling by continuing to interact with players after being instructed not to do so; and (3) Plaintiff violated NCAA rules by bringing a card and food to players after a game.[7]

To establish discrimination in discipline, Plaintiff must show these things: "1) that he belongs to a protected class under Title VII; 2) that he was qualified for the job; and 3) that a similarly situated employee engaged in the same or similar misconduct but did not receive similar discipline." Alexander v. Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000). Here, as the district court observed, Plaintiff fails to allege that a person outside of his protected class was not suspended after sexual harassment allegations were raised against that person. Plaintiff only has shown that Junkins, a person within his protected class, received similar discipline after being

_____

[7]Plaintiff acknowledged committing an NCAA violation; but he testified that his violation was accidentally leaving a television behind after he helped some players move into their dorm.

accused of similar misconduct. Therefore, Plaintiff has failed to make a prima facie case.[8]

3.      Disparate Discharge Claim

Plaintiff fails to establish a prima facie case for disparate discharge because he does not demonstrate that any similarly situated employees were treated more favorably than Plaintiff following the hiring of the new head coach. Plaintiff asserts that he suffered disparate treatment when his employment contract was not renewed following its expiration in June 2004. Defendant responds that Plaintiff's employment contract was not renewed because Plaintiff did not apply for a position after Audra Smith took over as the Team's new head coach in April 2004. Defendant also asserts that UAB never promised a new employment contract to Plaintiff and that Coach Smith retained no assistant coaches who had worked previously for Coach Milling.

To establish a prima facie case of disparate treatment based on an employee's discharge, Plaintiff must show that (1) he is a member of a protected class, (2) he was

---

[8]Plaintiff also argues that Milling made negative statements about men and engaged in "criticism of African-American players' ability to intellectually grasp the game of basketball." He also contends that Milling showed preferential treatment to Champion, such as allowing her to make trips to the Final Four. These assertions do not change the conclusion that Plaintiff failed to make a prima facie case on his disparate discipline claim.

9

qualified for the position, (3) he suffered an adverse employment act, and (4) his employer treated similarly situated employees outside of his protected class more favorably. Wilson, 376 F.3d at 1091. Here, none of the assistant Team coaches working for UAB before Smith became head coach continued to work for UAB under Coach Smith. Therefore, even assuming that Plaintiff satisfied the first three parts of his prima facie case, Plaintiff has not satisfied the fourth part because no similarly situated employees outside of Plaintiff's protected class were treated more favorably than Plaintiff.

4.      Disparate Hiring Claim

Although Plaintiff successfully established a prima facie claim for disparate hiring, he did not show that Defendant's legitimate non-discriminatory reason for not hiring him was pretextual. As such, summary judgment in favor of Defendant on this claim is warranted. Plaintiff contends that he was discriminated against on the basis of his gender when Athletic Director Brown hired Smith as the Team's head coach instead of hiring Plaintiff. Plaintiff argues that the hiring process was essentially a "sham" because Brown was affected by Milling's negative treatment of Plaintiff and because Brown did not call the references provided by Plaintiff, even though he did

10

call Smith's references. Defendant responds that Smith was more qualified than Plaintiff to serve as head coach.

As the district court correctly concluded, Plaintiff established his prima facie case on this claim because he showed (1) he was a member of a protected class, (2) he applied and was qualified for the head coach position, (3) he was not hired, and (4) the position was filled by a person outside of his protected class. Schoenfeld v. Babbitt, 168 F.3d 1257, 1267 (11th Cir. 1999). But Plaintiff failed to show that Defendant's articulated legitimate non-discriminatory reason for not hiring him as head coach -- that Smith was more qualified for the position -- was pretextual. Smith had worked for ten years as an assistant coach at the University of Virginia; and she was promoted to the position of Virginia's recruitment coordinator in 2000.[9] Smith's candidacy was recommended to Brown by Pat Summitt, the head coach of the women's basketball team at the University of Tennessee. In contrast, Plaintiff had less than three years of experience at UAB and ten years of experience as an assistant coach at a community college. Plaintiff has failed to present evidence that rebuts Defendant's proffered reason for not hiring him as head coach.

---

[9]During this time, the women's basketball team at the University of Virginia made nine consecutive NCAA tournament appearances.

5.    Retaliation Claim

Plaintiff's claim for retaliation fails. Plaintiff argues that Defendant retaliated against him for sending a letter to Athletic Director Brown in November 2003 complaining of discrimination and for filing a 29 December 2003 charge with the EEOC by (1) removing his remaining coaching duties on 6 January 2004; (2) not selecting him as Milling's replacement for the head coach position in April 2004; and (3) not renewing his original employment contract when it expired in June 2004.[10] To establish a prima facie case for retaliation, Plaintiff must show that (1) he engaged in a statutorily protected expression; (2) he suffered an adverse employment act; and (3) a causal link between the protected expression and the adverse act exists. Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999).

Even assuming that Plaintiff has established that Defendant's decision to remove Plaintiff's coaching duties on 6 January 2004 and to assign him to assist with

---

[10]At oral argument, Plaintiff also contended that Milling's decision to report Plaintiff for NCAA violations was a retaliatory act. Plaintiff admits to committing the violation and does not dispute that his employment contract states that employees "shall be subject to disciplinary or corrective action" if they are found to be in violation of NCAA rules and regulations. Even if Plaintiff is able to establish a prima facie case for retaliation, Defendant has a legitimate non-discriminatory interest in self-reporting such violations. Plaintiff offers no evidence to indicate that Defendant's interest is pretextual. Former Athletics Director Gene Bartow had previously reported violations by Millings and, in his letter to Millings, reminded her that if an employee is found in violation of NCAA rules, the employee may be disciplined.

12

the 25th Anniversary Celebration and to work in an "Operations capacity" qualifies as an adverse act, Plaintiff's claim for retaliation fails. First, Plaintiff has pointed to no evidence sufficient to establish a causal link between his letter or EEOC charge and Athletic Director Brown's decision to remove his coaching duties.[11] Second, even crediting Plaintiff's arguments on causation, Defendant has met its burden of producing a legitimate reason for the removal of Plaintiff's coaching duties: Milling's continued dissatisfaction with Plaintiff's job performance.

Defendant's Office of Human Resource Management ("HR") received Plaintiff's EEOC charge on 5 January 2004. HR did not notify Milling and Brown of the charge until 20 January 2004. As such, Brown could not have taken into account Plaintiff's protected act of filing an EEOC charge when he made the decision to alter Plaintiff's coaching responsibilities. See Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000) ("A decision maker cannot have been motivated to retaliate by something unknown to him."). And Brown's decision came nearly two months after Plaintiff's letter on 13 November 2003. Although a seven-week time lapse does not preclude a causal relationship between the acts, it does weaken Plaintiff's claim.

---

[11]At oral argument, Plaintiff also asserted retaliation based upon his email to Milling on 13 November 2003 and his email on 16 December 2003 to Connie Pruett regarding the disconnection of his cell phone. Nothing evidences that Director Brown was ever aware of either of these communications.

13

Even assuming that Plaintiff has made his prima facie case that the January 2004 change of duties was an adverse employment act for which a causal link exists with either Plaintiff's November 2003 letter or his EEOC charge, Defendant has met its burden of producing a legitimate reason for the removal of Plaintiff's coaching duties. Defendant asserts that Plaintiff's coaching duties were removed because of the pending sexual harassment allegations and because of Plaintiff's insubordination towards Milling. In October 2003, Plaintiff was reassigned to limited coaching duties restricting his personal access to players. After this reassignment, Milling repeatedly complained that Plaintiff engaged in insubordinate acts, including interacting with players and failing to complete scouting reports assigned to him. Milling also sent an email message as late as 29 December 2003 explaining that Plaintiff continued to have contact with players and that he had committed an NCAA violation by providing benefits to players. Plaintiff has offered no evidence demonstrating that, in the light of the head coach's repeated complaints, Defendant's proffered reasons are pretextual.

Plaintiff's claim for retaliation based upon Defendant's decision not to hire him as head coach or to renew his contract upon expiration also fails. Defendant was aware of Plaintiff's 13 November 2003 letter no later than 25 November and had notice of Plaintiff's original EEOC charge in January 2004, both of which occurred

14

three months before Plaintiff was denied the head coach position and over five months before his contract expired.[12] The amount of time that passed between Plaintiff's letter, his EEOC charge, and the alleged adverse acts of not to hiring Plaintiff as head coach or renewing his contract is too great to support a causal link. See Clark County Sch. Dist. v. Breeden, 121 S. Ct. 1508, 1511 (2001) (citing with approval circuit court cases invalidating temporal proximities of three and four months). Also, Defendant has offered legitimate reasons for its acts that have nothing to do with Plaintiff's protected conduct. Defendant chose to hire a more highly qualified applicant as head coach, and Plaintiff chose not to apply for a position as assistant coach under Audra Smith. Therefore, Plaintiff has failed to make a prima facie case of retaliation based on not being hired as head coach and not having his employment contract renewed.

III. Conclusion

_____

[12]Although Plaintiff did file an amended EEOC charge, he did not sign that charge until 30 June 2004; so the allegedly retaliatory acts could not be in response to the amended charge.

Plaintiff has failed to establish claims for either retaliation or disparate treatment under Title VII. The district court's grant of summary judgment for Defendant was warranted in the light of the evidence.

AFFIRMED.