[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11536
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cv-02311-JHE

CABREL JACOMB,

Plaintiff-Appellant,

versus

BBVA COMPASS BANK,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 4, 2019)

Before MARTIN, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Cabrel Jacomb appeals the grant of summary judgment in favor of BBVA Compass Bank on her claims of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and 42 U.S.C. § 1981. Jacomb alleges that BBVA retaliated against her by reducing her bonus pay and terminating her employment because she filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). The district court concluded that even if Jacomb established a prima facie case of retaliation, a reasonable jury could not find that BBVA's proffered explanations for its actions were pretextual. We affirm.

## I.    BACKGROUND

Although we write for the parties, we set out the timeline in some detail because Jacomb's claims rest in part on the timing of BBVA's actions. And because this case is at the summary judgment stage, we view the facts in the light most favorable to Jacomb. See Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir. 2010). In August 2010, Jacomb, who is African American, was hired as a Senior IT Project Manager in the Technology and Support Services ("TeSS") division of BBVA. In March 2013, Kristin Julbert, one of Jacomb's supervisors, issued her 2012–2013 performance evaluation. Julbert rated Jacomb's performance effectiveness as "below" expectations, her commitment as "good," her teamwork as "expected," and her performance overall as "expected." The

evaluation noted that while Jacomb exhibited "expected attributes in the area of teamwork," her frequent absences caused her "peers [to] feel as though she is not carrying her share of the project load."

In July 2013, Jacomb had a new supervisor, Angela Simmons, who conducted Jacomb's 2013 performance review and bonus evaluation.  Simmons reported directly to Kevin McMahon.  Jacomb's 2013 performance review reflected that she met expectations in all areas except for two: an area labeled "one team" and implementation of the picture bill pay pilot project by the deadline.  This performance review was used by BBVA to calculate Jacomb's performance "score," which, along with the bank's overall performance score, determined her eligibility for the bank's AIM bonus.  Because Jacomb's performance evaluation lowered her performance score, and because the bank's performance decreased, Jacomb's AIM bonus was lower than usual.  Once the bonus was calculated, Simmons presented Jacomb with her evaluation and bonus review.  After several months of reporting directly to Simmons, Jacomb began reporting to Michael Dale, who in turn reported to Simmons.

On September 24, 2013, Jacomb filed an EEOC charge against BBVA alleging racial discrimination based on harassment by her supervisors, Julbert and Jillian Henning.  In that charge, she claimed that Julbert spoke to her "in a harsh and demeaning manner," gave her "unjustified write-ups," harassed her about

taking sick leave, and gave her a negative evaluation that caused her to receive a lower raise and bonus than she was due.  She also claimed that Henning harassed her by threatening to "kick [her] ass."

On January 16, 2014, Jacomb was transferred from the TeSS Division to the Digital Banking Division, which had been recently created out of the TeSS Division.  The decision to transfer Jacomb was made no later than December 5, 2013.  On February 28, 2014, Jacomb complained to BBVA that her AIM bonus had been unfairly low in retaliation her filing an EEOC charge.  On March 25, 2014, Jacomb filed an amended EEOC charge, which added a claim of retaliation for filing her initial EEOC charge based on her evaluation and bonus.  In the EEOC charge Jacomb stated that during the bonus evaluation meeting, Simmons remarked that Jacomb was not a "team player," which she believed was a reference to her pending EEOC charge.

On September 5, 2014, Jacomb was informed by Crystal Berryhill in the Human Resources department that her bonus was being adjusted based on the internal complaint she filed in order to give her full credit for her individual performance.  Berryhill's email stated that the adjustment assumed that she had received full points for teamwork and timely implementation of the bill pay pilot program.  Berryhill also explained that Jacomb's bonus was being adjusted because her supervisors could have better explained their expectations in those two

areas.  The email noted that Jacomb's bonus was still lower than it had been in previous years because of the bank's overall performance.

In the spring of 2014, BBVA began implementing a project known as the USA Staffing Plan, which was intended to identify and alleviate redundancies and inefficiencies throughout the company.  As part of the Plan, each division was tasked with reducing its total costs by at least 30%.  The organizational baseline used to identify positions subject to the Staffing Plan was conducted in "December 2013/January 2014."  The decision to eliminate Jacomb's position and terminate her employment was made on May 28, 2014, published on June 4, 2014, and became effective on September 25, 2014.  Jacomb maintains that she was laid off because she filed an EEOC charge and an amended EEOC charge against BBVA.  BBVA asserts that her position was instead eliminated as part of the USA Staffing Plan.

On February 20, 2015, Jacomb filed a second amended EEOC charge, alleging that BBVA terminated her employment because of her first EEOC charge.  Thereafter, Jacomb filed this action in the district court on December 22, 2015, alleging in relevant part that BBVA had unlawfully retaliated against her by reducing her bonus and terminating her employment in violation of 42 U.S.C. § 2000e-3(a) and 42 U.S.C. § 1981.  Both Jacomb and BBVA consented to having the case decided by a United States Magistrate Judge.   The magistrate judge

5

granted summary judgment in favor of BBVA on all claims.    Jacomb timely appealed.

## II.  STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment. Goodman v. Kimbrough, 718 F.3d 1325, 1331 (11th Cir. 2013).  We will affirm "if we conclude that there is no genuine issue of material fact—that is, if no 'fair-minded jury could return a verdict for the plaintiff on the evidence presented.'"  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

## III.  DISCUSSION

Title VII prohibits an employer from discriminating against an employee because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under Title VII, 42 U.S.C. § 2000e-3(a), including the filing of a charge of discrimination with the EEOC.  42 U.S.C. § 1981 prohibits discrimination in the making of contracts on the basis of race. "Title VII and § 1981 have the same requirements of proof and present the same analytical framework."  Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1347 n.1 (11th Cir. 2007).

The McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting framework applies to Title VII retaliation cases, see Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010), and therefore to § 1981 cases.

6

Under that framework, the employee must first establish a prima facie case of retaliation by showing that "'(1) [s]he engaged in a statutorily protected activity; (2) [s]he suffered an adverse employment action; and (3) [s]he established a causal link between the protected activity and the adverse action.'" Id. (quoting Bryant v. Jones, 575 F.3d 1281, 1307 (11th Cir. 2009)).  If the employee meets this burden, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action.  Id.  If the defendant carries this burden, the employee must demonstrate that the employer's reason was merely pretext for retaliation.  Id. at 1181–82.

Protected activity under Title VII includes "proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC." E.E.O.C. v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000).  A materially adverse action in the context of a Title VII retaliation claim includes any action that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  Crawford v. Carroll, 529 F.3d 961, 973–74 (11th Cir. 2008) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006)).

To show a causal link between the protected activity and the adverse employment action, the plaintiff need show only that the two "were not wholly unrelated." Clover v. Total Sys. Serv., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999)

(quoting Simmons v. Camden Cty. Bd. of Educ., 757 F.2d 1187, 1189 (11th Cir. 1985)).  At a minimum, the plaintiff must show that the employer was aware that she engaged in protected activity at the time it exercised the adverse employment action.  Id.  Causation may also be inferred from the closeness in time between the protected activity and adverse employment action.  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).  But "mere temporal proximity, without more, must be 'very close.'"  Id. (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)).  Events that have taken place more than three months apart are not considered "very close."  Id.

## A.    Termination of Employment.

Jacomb and BBVA agree that Jacomb's EEOC charge and amended EEOC charge qualify as protected conduct and that she suffered an adverse employment action in the termination of her employment.  Accordingly, the only contested element of Jacomb's prima facie case is whether Jacomb established a causal link between her EEOC charge—or amended EEOC charge—and the termination of her employment.

Jacomb argues that she established causation based on the temporal proximity between her amended EEOC charge and the decision to terminate her employment, which occurred about two months apart.  Although this Court has held in a published opinion that a three-month gap is not considered "very close"

8

such that temporal proximity alone is sufficient, Cooper Lighting, 506 F.3d at 1364, our case law addressing causation between events that are two months apart consists solely of unpublished opinions with mixed outcomes.  Compare Embry v. Callahan Eye Foundation Hospital, 147 F. App'x 819, 831–32 (11th Cir. 2005) (assuming without deciding that two months satisfied the causal connection requirement) with Williams v. Waste Mgmt., Inc., 411 F. App'x 226, 229–30 (11th Cir. 2011) (concluding that a two-month gap is not "very close").

Jacomb argues that in any event she has presented more than temporal proximity because she showed that her indirect supervisor, McMahon, who was involved in the decision to eliminate her position, knew of her EEOC charge.  An employee can establish causation by showing "that the decision maker was aware of the protected conduct at the time of the adverse employment action."  Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000).  An employer's awareness of an employee's protected activity may be shown by circumstantial evidence.  See Clover, 176 F.3d at 1354.  It is undisputed that McMahon was involved in the decision to eliminate Jacomb's position, but the parties disagree about whether the record supports an inference that McMahon knew about Jacomb's EEOC charge.  Jacomb argues that because McMahon was a division manager and supervisor three levels above her, it is reasonable to infer that McMahon knew about the EEOC charge.  The district court agreed with this

9

rationale even though it did not ultimately decide the causation issue.  We think that it is plausible that a relatively high-level manager would know about an EEOC charge filed by one of the employees he supervises and assume arguendo that Jacomb has presented a prima-facie case of retaliation.

Accordingly, the burden shifts to BBVA to provide a non-retaliatory reason for its employment action.  BBVA maintains that Jacomb's position was eliminated as part of its USA Staffing Plan, and that Jacomb's position was eliminated because of its duties and responsibilities regardless of the division in which it was located.  That is a legitimate, non-retaliatory reason for the adverse employment action; therefore, the burden then shifts back to Jacomb to offer evidence that BBVA's explanation was merely pretext and that retaliation was the real reason for terminating her position with BBVA.  This she fails to do.

To show pretext, an employee must demonstrate "such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  McCann v. Tillman, 526 F.3d 1370, 1375 (11th Cir. 2008) (quoting Cooper Lighting, 390 F.3d at 725).  In addition to showing that the employer's proffered reason is false, the employee must also show that discrimination was the real reason for the adverse employment action.  See Brooks v. Cty. Comm'n of Jefferson Cty., 446 F.3d 1160, 11263 (11th Cir. 2006).  Jacomb

10

argues that three pieces of evidence together establish that the USA Staffing Plan was pretext and that retaliation was the real reason for her termination: (1) the timeline of events, (2) Simmons's remark that Jacomb was not a "team player," and (3) McMahon's statements that he did not know why she had been selected for termination and that he thought her performance had been satisfactory. We address each in turn, keeping in mind that Jacomb argues that while any individual piece of evidence may be insufficient, the evidence cumulatively supports an inference of pretext.

First, Jacomb argues that the timeline of events undermines BBVA's proffered reasons for her termination. To properly address this argument, we briefly review the timeline. Jacomb filed her initial EEOC charge on September 24, 2013. She was transferred out of the TeSS division into the Digital Banking Division on January 16, 2014. She made an internal complaint of retaliation on February 28, 2014. She then filed her amended charge of discrimination on March 25, 2014. The decision to eliminate Jacomb's position at BBVA was made on May 28, 2018, and the decision was published on June 4, 2014. Jacomb argues that the fact that the decision to transfer her to the Digital Banking Division was made in early December and the USA Staffing Plan footprint was made in December 2013 or January 2014 undermines BBVA's assertion that her position was eliminated as part of the USA Staffing Plan. However, Jacomb was still in the

11

TeSS Division nearly the entire time that the assessment was made. Further, BBVA has explained that Jacomb's position was eliminated because of its duties and responsibilities rather than its position in the organizational charge, and Jacomb has not rebutted that assertion,[1] and her basic duties remained unchanged notwithstanding the transfer.

Jacomb also argues the fact that she was the only person from the Digital Banking Division whose employment was terminated as part of the USA Staffing Plan undermines BBVA's story. For the proposition that she was the only Digital Banking Division employee laid off, Jacomb cites an August 4, 2014 email that lists Jacomb and three other employees as "displacements" of the USA Staffing Plan under the heading "D&D." The email then lists a number of other individuals under the heading "IT." But this email does not show that Jacomb was the only person from the Digital Banking Division discharged as part of the Staffing Plan—if anything, it shows that she was *not* the only employee from her division who was laid off as part of the USA Staffing Plan. But even if Jacomb could establish that she was the only employee in the Digital Banking Division who was laid off,

---

[1] Jacomb also argues that the fact that the decision to eliminate her position was not made until May or June 2014 casts doubt on BBVA's explanation that it considered the December/January footprint in making its decision. But we do not accept Jacomb's speculation that it would be unreasonable for it to take a few months for BBVA to implement the footprint and decide which positions to eliminate. Moreover, the timing of Jacomb's departure, around September or October 2014, is consistent with that of the other employees who were laid off as part of the USA Staffing Plan.

Jacomb has not rebutted BBVA's explanation that her position was eliminated because of its duties and responsibilities rather than the division in which it was located. She has not provided evidence showing, for example, that her job duties or responsibilities changed when she changed divisions or that she was the only employee performing those duties who was laid off.

Second, Jacomb argues that a reasonable inference of pretext can be drawn from Simmons's comment that she was not a "team player" because the remark was a reference to her EEOC charge. As an initial matter, there is no evidence that Simmons knew about Jacomb's EEOC charge. But in any event, Jacomb's argument is contradicted by her 2012–2013 performance evaluation—which was made before Jacomb's EEOC charge—and her 2013 AIM bonus evaluation, thus showing that her supervisors, Julbert and Simmons, both felt she had problems with teamwork. In the 2012–2013 evaluation, Julbert rated Jacomb as meeting expectations in the area of teamwork but also noted that her repeated absences from work interfered with her ability to work as part of a team. Simmons' evaluation went further and found that Jacomb did not meet expectations in an area labeled "one team." Therefore, the record supports only the conclusion that Simmons's remark reflected her own view—which was shared by Julbert—that Jacomb's performance was lacking in the area of teamwork. But even if Jacomb could show that the remark was a reference to Jacomb's EEOC charge, there is no

evidence that Simmons was involved in the decision to eliminate Jacomb's position. Accordinly, Jacomb's argument does not effectively disprove BBVA's assertion that her position was eliminated as part of the USA Staffing Plan.

Third, Jacomb argues that she established the requisite pretext because McMahon untruthfully told her that he did not know why her employment was terminated and that he said that he thought her performance was satisfactory. But this argument is seemingly predicated on a case of mistaken identity. In her deposition, Jacomb stated that she did not recall having that conversation with *McMahon*, but instead had it with *Michael Dale*. Dale was the one who told Jacomb that he did not know why her employment was terminated and that he thought her performance was satisfactory. In any event, statements that there were no problems with Jacomb's performance do not undermine, and are in fact consistent with, BBVA's explanation that Jacomb's position was eliminated as part of the USA Staffing Plan.

Ultimately, we conclude that the district court did not err in granting summary judgment to BBVA on Jacomb's retaliation claim based on her discharge. The evidence of causation is, at most, tenuous. But even assuming Jacomb could make a prima facie case, we conclude that no reasonable jury could find that BBVA's proffered reason for terminating Jacomb's employment was pretext.

## B.    Reduced Bonus.

As noted earlier, it is undisputed that Jacomb engaged in protected conduct when filing her EEOC charge and amended EEOC charge.  But BBVA contends that Jacomb did not suffer an adverse employment action in the form of her lower bonus because the bonus was eventually adjusted to the amount it would have been absent her lower individual performance score.  That argument is foreclosed by this Court's precedent holding that the denial of a merit pay increase is an adverse employment action even if the pay increase is later awarded retroactively, because the employee has been deprived of the value and use of the money in the interim. See Crawford, 529 F.3d at 973.

Jacomb argues that three pieces of evidence establish both causation and pretext with respect to her AIM bonus: (1) Simmons's "team player" comment, (2) the fact that BBVA later increased her bonus, and (3) the fact that her bonus remained lower than in previous years.  We determine that no reasonable jury could conclude those facts establish either causation or pretext.[2]

First, Jacomb argues that Simmons's "team player" comment was a reference to her EEOC charge, and therefore, establishes causation and pretext.

---

[2] Because this Court has held that a three-month gap, which was the gap between Jacomb's September EEOC charge and the December decision regarding her bonus, cannot establish causation standing alone, Jacomb must present evidence other than temporal proximity in order to establish causation.  See Cooper Lighting, 506 F.3d at 1364.

15

But, as already discussed, there is no evidence from which a jury could infer that Simmons's remark was a reference to the EEOC charge. Moreover, there is evidence contradicting such an inference—namely, Simmons' and Julbert's performance evaluations.

Second, Jacomb argues that the fact that BBVA later adjusted her bonus shows that the original bonus reduction was retaliatory. At the time that BBVA adjusted her bonus, it explained that it was doing so because her supervisors could have better explained their expectations for her performance. Jacomb provides no rebuttal to that explanation.[3] Third, Jacomb implies that because her bonus remained lower than it had been in previous years even after the adjustment, the reduction must have been retaliatory. But BBVA explained that her bonus was lower due to the overall performance of the bank, and Jacomb has not presented evidence to the contrary.

Even if Jacomb could establish a prima facie case of retaliation, a reasonable jury could not conclude that BBVA's proffered reasons for Jacomb's reduced bonus and her discharge were pretext for retaliation. Accordingly, the district court did not err in granting summary judgment to BBVA.

## IV.  CONCLUSION

---

[3] We are troubled by the consequences of accepting Jacomb's argument that the mere fact of the bonus adjustment establishes retaliation—if we embraced that rationale, it would almost certainly discourage employers from communicating about and correcting genuine mistakes.

16

The judgment of the district court is **AFFIRMED**.